SASSER *v.* MARTIN, ordinary.

The item in the words below quoted, occurring in section 529 of the Code of 1882, fixing county charges for licenses to sell spirituous liquors, viz. : "To retail spirituous liquors, $25.00," and the provisions of sections 1419 and 1422 of that Code, even when construed all together, can not be regarded as constituting, within the meaning of the constitutional provision below mentioned, a "general law" the existence of which would render a special act prescribing the method of granting such licenses in a given county, imposing upon applicants for the same conditions not embraced in the second of the above cited sections, and fixing the license fee at a sum other than $25.00, violative of that clause of the constitution of this State which declares that "no special law shall be enacted in any case for which provision has been made by an existing general law."

SIMMONS, C. J., dissenting.

Argued January 21, — Decided August 7, 1897.

Petition for mandamus. Before Judge Gamble. Bulloch county. September 4, 1896.

*Cason & Everitt,* by *James K. Hines,* for plaintiff.

LITTLE, J. The legislature of Georgia, by an act approved September 5, 1879 (Acts 1878–79, p. 381), undertook to prescribe the method of granting license to sell spirituous or intoxicating liquors in the county of Bulloch, and fixed the fee for same at the sum of five thousand dollars. Section three of that act prescribed a punishment for any person who should sell spirituous or intoxicating liquors of any kind in Bulloch county without the license provided in the act. It may be stated in general terms that the first section of the act referred to provides that the county authorities of Bulloch county shall not grant to any person license to sell spirituous or intoxicating liquors, except upon written petition of the applicant stating the place at which he desires to sell, and showing by endorsement thereon the written consent of two thirds of the qualified voters living within three miles of the place so designated. The second section of the act provides that the applicant for such license, in addition to the foregoing described petition, shall give the bond and take the oath required by law for retailers, and shall pay to the ordinary or board of commissioners of roads and revenue of the county a license fee of five thousand dollars. In the case of *Sasser* v. *The State,*

99 *Ga.* 54, it was held that the third section of the act above referred to was unconstitutional, because that section of the act contained matter different from what is expressed in its title.

The legal proposition submitted in the present case involves the constitutionality of the act as a whole. The plaintiff in error applied to the ordinary for a license to retail spirituous liquors in Bulloch county, and tendered him the sum of twenty-five dollars. The ordinary refused to grant the license, putting such refusal not upon his discretion, but because the first and second sections of the act before referred to prohibited him from so doing, expressly stating in his order of refusal that he was left no discretion in the matter, and that if he had exercised a discretion he would have granted the license. The plaintiff in error thereupon applied for the writ of mandamus to compel the ordinary to grant such license on such tender. The court below refused to grant the writ of mandamus, and the exception to such refusal is now here to be considered.

Recognizing that very many counties in the State of Georgia have had local acts on the subject of retailing spirituous liquors since the constitution of 1877 was adopted, we prefer to pass the consideration of minor questions and place our decision on the validity of the act. It is well to understand that this act of the General Assembly, when it came under review in the case of *Sasser* v. *The State,* supra, was not pronounced unconstitutional further than the third section of the act, which provided for the punishment of a person who violated its provisions. The matter of punishment for a sale of liquor in violation of its terms not being referred to in nor covered by the title of said act, that section was, in consequence, held unconstitutional. The same objection can not be urged to the sections now under consideration, because the title of the act is, "An act to prescribe the method of granting license to sell spirituous or intoxicating liquors in the county of Bulloch, and to increase the fee for the same to five thousand dollars." Here the main question to be considered is the right of the General Assembly to fix the fee for retailing liquors in Bulloch county at the sum of five thousand dollars,

and the title of the act expressly covers this point, as well as the change in the method of granting a license.

The contention of the plaintiff in error is, that the act in question, leaving out the third section, is unconstitutional, because it is a local act passed since the constitutional provision of 1877 was adopted, and that that instrument (art. 1, sec. 4, par. 1) provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law"; and this being a special law for Bulloch county, it must be held to be unauthorized by the constitution, because there is an existing general law providing for the granting of license to retail spirituous liquors in the several counties of this State. The learned counsel for the plaintiff in error, who so strongly presented his case, refers us to certain sections of our code and acts of the General Assembly, which he claims prescribe a general law on this subject. He insists that the provisions of § 1419 of the Code of 1882, which points out the method by which license to retail spirituous liquors may be granted (that is to say, the person applying must petition the ordinary, who has power to grant or refuse the application, and that if the license is granted, a bond shall be executed, conditioned to keep an orderly house and to abide faithfully by the oath to be taken by the applicant as prescribed therein), as well as the amendment thereto made by an act of the General Assembly, approved December 22, 1884 (Acts 1884–5, p. 42), which regulates the quantity to be sold at less than one gallon, etc., coupled with section 529 of the Code of 1882, which, in a schedule of charges fixed for licenses in various cases, declares that the license to sell spirituous liquors by retail is $25.00, make a general law in relation to the retail of spirituous liquors and the granting of license for the same; and that as the act under consideration varies this general law, it must be held obnoxious to the constitutional provision above quoted; and that under this general law, on the tender to the ordinary of Bulloch county the sum of $25.00 and the offer to take the oath and make the bond prescribed in the code, this applicant

is entitled to receive a license to retail spirituous liquors in said county, or at least have the ordinary exercise his discretion in the matter of granting the same. The plaintiff in error has cited many cases which he considers as authority for the ruling which he invokes. Among others, reference is made to the case of the *County of Dougherty* v. *Boyt*, 71 *Ga.* 484. The facts were, that a local act for Dougherty county was passed, authorizing an election to be held by the citizens of that county as to whether or not bonds should be issued by said county for a particular purpose. This act was passed on the 10th of September, 1879. The same session of the General Assembly passed a general act in respect to the manner in which the counties and municipalities in this State should hold elections to determine the issue of bonds, etc. The local act provided for an election in a different manner, with different notices and by different voters with regard to registration, than was provided by the general law of 1879. The question being made, it was ruled that, after the enactment of the general law, when a second local act was passed seeking to revive and continue the first local act in force, the act so seeking to revive and continue the local act first passed was unconstitutional. This ruling was based on the broad proposition, that there was a general law in force in relation to the subject-matter, and that the local act which undertook to provide for the same subject-matter was violative of the constitutional provision hereinbefore referred to. It will be noted that the opinion of the court in that case dealt with the last local act passed after the general law was made, and it was held that this local act was in conflict with the provisions of the general act and was clearly unconstitutional.

The next case cited is that of *Elliott* v. *Gammon*, 76 *Ga.* 766, which was in relation to the debt which the county of Floyd might incur under the constitution. A review of it does not disclose any ruling in conflict with the decision here made.

In the case of *Houston County* v. *Killen*, 76 *Ga.* 826, to which we have been referred, there was an amendment made by the General Assembly in 1883 to an act passed in 1877 in

regard to the employment of convicts on the public roads in Houston county. It was ruled there that there was a general law on the subject, and that the amendment to the original act conflicted with such general road laws of the State; and consequently that the local act was unconstitutional and void, and that no recovery could be had on a contract made under it.

Again in *Maxwell* v. *Tumlin*, 79 *Ga.* 570, to which our attention has been directed, it was held that the legislature, having passed a general act on the subject of carrying cases from inferior courts to the superior court by writ of certiorari, had no power under the constitution to pass a special and different act for the county of Bartow. The local act for Bartow county provided for a bill of exceptions. The general law required certiorari.

Attention was also called to the case of *Mathis* v. *Jones*, 84 *Ga.* 804, where the court held that the code established an optional system of fence law, general in its nature and of uniform operation throughout the State, and that this being true, there was no power in the General Assembly to legislate specially for two militia districts in a county in this State so as to dispense with the popular vote provided for in the general law.

In the case of *Crabb* v. *The State*, 88 *Ga.* 584, the court considered the question of the validity of an act to prohibit the sale of intoxicating, malt or spirituous liquors in any quantity in the county of Polk; and it was there held, that inasmuch as the act approved September 18, 1885, known as the general local option liquor law, was a general law and provided the method for obtaining prohibition in the several counties of this State, the local act conflicted with it, and being a special act on a subject for which provision was made by general law, such local act was unconstitutional.

So also an act of the General Assembly, which was passed applicable to Harris county, which declared it unlawful to sell spirituous liquors in that county by the gallon or larger quantities, unless the seller shall pay a tax of twenty-five dollars to the county and obtain the written consent of two thirds of the bona fide citizens, freeholders, within three miles of the locality where the same is sold, and present the same to the

county commissioners, and vesting said commissioners with the discretion of granting or refusing a license therefor, when brought under review before this court in the case of *Smith* v. *The State,* 90 *Ga.* 133, it was held that such local act conflicted with a general law of the State, which provided that liquor-dealers were authorized to register without obtaining permission from any one and without paying any county taxes, and consequently the local act was unconstitutional.

It will be observed that in each of the cases cited, and in all of the cases which may be cited on the same subject, the validity of the local statute is to be determined on the question whether there is a general law in force in the State by which provision is made for the subject sought to be provided for by such special statute. Where there is such a general law, the local law must yield under the provision of our constitution. Unless there is such a general provision, then it is entirely competent in cases of this character for the legislature to act. It will be further observed that in all of the cases cited by counsel for plaintiff in error, there was clearly distinguishable a general law applicable, or which might be made applicable, to all the counties in this State and which was uniform in its operation or capable of being made uniform in its operation upon the subject or class of subjects with which it purported to deal.

The contention of the plaintiff in error is, that the statutes we first referred to created a general law on the subject of granting license for the sale of spirituous liquors. He contends that it is the general law of this State, that where an application is properly made and a bond executed as provided by the statute and the sum of twenty-five dollars is tendered and the oath is ready to be taken, it then becomes a matter of discretion with the ordinary of the county where these things take place, whether the license shall be granted or not; and that where the ordinary refuses, not because of the exercise of his discretion, but because of a local act which fixes the license fee at a higher rate than that prescribed in the Code, such local act is unconstitutional, and if the discretion is only controlled by the provisions of such local act, the license must be

granted. The pivotal point therefore, upon which the case under review turns, is, whether the code provisions heretofore referred to, and upon which the plaintiff in error relies, constitute a general law within the meaning of the constitutional provision heretofore quoted.

By section 1419 of the Code of 1882, the method of obtaining license to retail spirituous liquors is pointed out and provided; and by section 529 of that code the fee to be charged for such license is fixed. Thus far the provisions of these sections are applicable to the entire territory of the State. But by section 1422 of the same code it is declared: "Said provisions [referring to section 1419 and intermediate sections] do not apply to any incorporated town or city which by charter has power to grant licenses." We are therefore to ascertain whether these provisions of the code contained in the several sections, construed together, constitute a general or a special law. In analyzing the statute and ascertaining its character, it is well to preface the discussion with certain propositions which, though not new, are important to be kept in mind in giving character to the statute now under consideration.

In the classification of statutes, they may be divided generally into public laws, private laws, general laws, local laws, special laws. A public law may be general, local or special; it can never, however, be a private law. A general law is essentially a public law. But the converse cf the proposition is not true; nor can a general law be local in its operation.

A public statute is defined by Blackstone to be "a universal rule that regards the whole community"; while he says, "private acts are those which concern only a particular species, thing or person." 1 Blackstone's Com. 86. Dwarris says that "Public acts relate to the public at large, and private acts concern the particular interest or benefit of certain individuals or particular classes of men." "A public act need not be a universal rule, in the sense that it must purport to apply to the whole territory or the entire people subject to the legislative jurisdiction. It may be applicable to only the smallest political division or to a small class of the people, and still be a public statute. If it concern the pub-

lic and not merely a private interest, it is a public statute,. though local or special.   A public statute affects the public at large, either throughout the entire State, or within the limits of a particular locality where the act operates; and a private statute relates to or affects a particular person by name, or so that certain individuals or classes of persons are interested in a manner peculiar to themselves, and not in common with the entire community." Sutherland, Stat. Const. § 198.   When a public statute is confined to a particular place or locality, or is restricted so as not to operate upon all places which would classify with that to which the act is confined, it is local.   A public statute is special, not only when it is local, but also when it is confined in its subject to less than a class of persons or things.   Id.

The question involved in this case, however, turns upon the point as to whether the provisions of our code referred to, which are of a public character, constitute a law which is general, or local only; and when the line of distinction between general and local laws shall have been clearly drawn, it will not be difficult to place the law under consideration in the category to which it properly belongs.

To clothe a law with a general character, in contradistinction to a local character, it is not essential that it should affect every person, object or thing in the State, nor operate territorially throughout the entire limits and in all parts of the State. In the State there exists a great variety of subjects of legislation, each requiring provisions peculiar to itself.   Generic subjects may be divided and subdivided into as many classes as require this peculiar legislation.   Thus laws relating to the people, for certain purposes, extend to all alike, as for protection of person and property; for other purposes they are divided into classes, as voters, sane and insane persons, minors, husbands and wives, parents and children.   Property is subject to division into classes.   Thus timber lands, arable lands, mineral lands, urban and rural lands may be divided into classes for various purposes.   Nearly every matter of public concern is divisible, and division is necessary to methodical legislation.   Sutherland, § 121.   The Supreme

Court of Pennsylvania, in 77 Penn. St. 338, say: "In, like manner other subjects, trades, occupations and professions may · be classified. And not only things, but persons may be so divided. The genus homo is a subject within the meaning of· the constitution. Will it be contended that as to this there can be no classification? No laws affecting the personal and property rights of minors as distinguished from adults? Or of. males as distinguished from females? Or, in case of the latter, no distinction between a feme covert and a single woman?" etc.

It is undoubtedly within the power of the legislature, for the purpose of exercising its legislative authority over the subjects thereof, to classify ad infinitum, and legislate with respect to each classification, without entering the realm of local legislation, with these limitations, however, viz. :

1st. The classification must be natural, not arbitrary; it must stand upon some reason, having regard to the character of legislation of which it is a feature. 14 L. R. A. 725. In this case the Supreme Court of North Dakota, in adjudicating upon the character of a statute excluding from its operation certain counties, with reference to a constitutional provision prohibiting special legislation locating or changing county-seats, said: "This section of the constitution must have a reasonable construction. To say that no classification can be made under such an article, would make it one of the most pernicious provisions ever embodied in the fundamental law of the State. It would paralyze the legislative will. It would beget a worse evil than unlimited special legislation—the grouping together without homogeneity of the most incongruous objects under the scope of an all-embracing law. On the other hand the classification may not be arbitrary. The legislature can not finally settle the boundaries to be drawn. Such a view of the organic law would bring upon this court the just reproach that it had suffered the legislature to disregard a constitutional barrier by relegating to it the question where that barrier should be set up." Citing 40 N. J. L. 71–80. Continuing the court say: "We find in the adjudications no more felicitous statement of the true doctrine than that of Chief Justice Beasley, in State v. Hammer, 42 N. J. L. 439, 'But the

true principle requires something more than a mere designation by such characteristics as will serve to classify; for the characteristics which thus serve as a basis for classification must be of such a nature as to mark the object so designated as peculiar, requiring exclusive legislation. There must be a substantial distinction, having reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree at least, account for or justify the restriction of the legislature.' The whole trend of the authorities is in this line." Citing numerous cases. 14 L. R. A. 727; 51 N. J. L. 155; 40 Minn. 117; Sutherland, St. Const. § 128. The classification of cities with respect to other divisions and sections of the State; and also the classification of cities with respect to each other according to population; the classification of organized and unorganized counties, have all been sustained. 3 Am. & Eng. Enc. Law, 696, note.

2d. The other limitation is, that the law must be coextensive with and operate uniformly upon the entire class to which it is applicable. "A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." Sutherland, § 121. "A law which does not operate alike upon all subjects of legislation, and upon all citizens and persons uniformly and in the same manner where they stand in the same category, is not general." 17 Cal. 554; 24 Cal. 544; 26 Cal. 256; 37 Cal. 366. The North Dakota court, supra, says: "But it is our opinion that every law is special which does not embrace every class of objects or persons within the reach of statutory law, with the single exception, that the legislature may exclude from the provisions of a statute such classes of objects or persons as are not similarly situated with those included therein, in respect to the nature of the legislation."

Summarized, the rule may be stated to be, in the language of the court in 40 N. J. L. 143: "A law framed in general terms, restricted to no locality, and operating equally upon all

of a group of objects, which, having regard to the purpose of
the legislature, are distinguished by characteristics sufficiently
marked and important to make them a class by themselves,
is not a special or local law, but a general law." And con-
versely, that a statute that can not be reduced to a general
rule to operate uniformly upon the entire class of subjects with
which it purports to deal, is not a general, but a special or lo-
cal law.    3 L. R. A. 210.

Applying these principles to the statute under review, how
stands the case? This statute does not purport to operate
throughout the entire territorial limits of the State.    The ques-
tion then arises, can the statute be held general on the ground
of classification?    To ascertain this, it is only necessary to in-
quire, whether it excludes from its operation such classes of
applicants for license only as are not similarly situated with
those or any of them included therein.    The mere fact that
the legislature had theretofore conferred upon certain towns
authority to grant license would not serve as a classification.
The exception clearly relates to towns only that then had legis-
lation on the subject.    This interpretation is borne out by the
fact that by the act of 1891 the legislature, among other things,
so amended this provision of the code as to make it inapplica-
ble to incorporated towns or cities.    Acts 1890–1, p. 128.
The exception in the code is equivalent to excepting by name
certain towns and cities, and there is nothing in the language
of the exception which would indicate that these towns and
cities so excepted constituted all the towns and cities in the
State, or formed a class which would justify legislative discrim-
ination; and again, what was to become of towns subsequently
incorporated? For aught that appears in the statute, its provi-
sions might operate upon the locality and inhabitants of certain
towns, while excluding the locality and inhabitants of other
towns practically similar in point of population and in needs and
necessities relatively to their internal affairs and management.
There is nothing from which it can be determined that the
excepted towns, relatively to other towns which may not have
been excepted, were distinguished by characteristics sufficiently
marked and important to make them a class by themselves.

The nature and character of the statute now under consideration, as embodied in the code sections referred to, are very dissimilar to and easily distinguishable from the nature and character of those statutes in this State known as the local option liquor law, the fence law, and road law.

The local option liquor law (Acts 1884–5, p. 121) is entitled, "An act to provide for preventing the evils of intemperance, by local option in any county in this State, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county; to provide penalties for its violation, and for other purposes." Its provisions are made applicable to "any county in this State," with the proviso, "that no election shall be held under the provisions of this act for any county, city, town, or any other place in this State, where by law the sale of spirituous liquors is already prohibited, either by high license, local option or other legislation, so long as these local laws remain of force; *provided* that no election shall be held under the provisions of this act, where an election has been held under any local act, until two years shall have expired from the date of said election under said local act where the result was 'for the sale.' "

The provisions of section 1449 et seq. of the Code of 1882, as amended by the acts of 1883 (Acts 1882–3, pp. 49 and 129), and the act of 1889 (Acts 1889, p. 60), provide for and establish a general optional system commonly known as the "no fence" or stock law, applicable to each and every county of this State and each and every militia district of such county, and may thus operate. The code provisions relating to the laying out, opening, altering and working the public roads of this State, as modified and amended by the acts of 1883 (Acts 1882–3, p. 140), 1891 (Acts 1890–1, pp. 134, 135), and 1893 (Acts 1893, p. 125), constitute a system of road law, "general in its nature and of uniform operation throughout the State." *Mattox* v. *Knox*, 96 *Ga.* 404. Under the acts of 1891 and 1893, supra, the system may be put in operation or suspended upon the recommendation of the grand juries of the respective counties. The act of 1883, by which the code provisions were first amended, is entitled, "An act to provide an

*additional system* of working public roads in this State; to appoint a board of commissioners for the several counties; to define their powers and duties; and to authorize the payment of a commutation tax in lieu of road-working; and for other purposes." By section 14 of this act it is provided, "That nothing in this act shall be construed as repealing the laws now of force in this State for working public roads, but is hereby declared to be an *additional system* of working public roads in this State, and it shall be optional with the county boards to adopt either mode of working the public roads of their respective counties. Nor shall this act interfere with any municipal system of any city or town in this State, nor with any local law of force in any county of this State on the subject of working roads, but it is declared to be an additional system for any such county; provided, however, that no person shall be exempt from road duty in this State, under this or any other road law of this State, except such as are exempt by this act." And by the Acts of 1891, p. 137, sec. 7, it is provided that the citizens of cities and towns shall not be required to work the public roads outside the corporate limits, nor to pay the commutation tax.

Thus it will be seen that these laws constitute general systems for each of the subjects with which they deal, and operate uniformly thereupon. In this uniformity of operation two distinct elements are embraced. In neither instance has the legislature put the law in motion. It has enacted a perfect system, coextensive with the territorial limits of the State and broad enough to cover and operate upon the entire subject. This system it has suspended over and throughout the length and breadth of the State. The several counties or districts, as the case may be, are to first adopt or do the acts required to put the law in motion; in this respect the law operates generally and uniformly upon all, and when put in motion, its operation is no less general and uniform. Whether every county or district in the State shall avail itself presently or in future of the provision of the law, is a question which can not determine the character of the legislation. Their failure to do so arises by reason of no defect in or absence of gen-

erality in the system itself.    It is sufficient that the law is
applicable to all alike.

But it may be insisted that if the local option liquor law
and road law are to be construed as general, then why not so
construe the statute relating to the retail of spirituous liquors,
inasmuch as the former laws except from their operation cer-
tain localities.    This contention finds its answer in a proper
construction of the exceptions as they are found in these laws.
In construing the liquor law and declaring it to be a general
law, Mr. Justice Lumpkin, in the case of *Crabb* v. *The State*, 88
*Ga.* 587, says: "It is true that section 9 of this act enacts
that no elections shall be held under its provisions in any
county or other place where the sale of spirituous liquors is
already prohibited by high license, local option or other legis-
lation, so long as these local laws remain of force, but the act
nevertheless undoubtedly contemplates that it may operate in
counties or other localities where prohibition existed at the
time of its passage, whenever such prohibition shall cease to
exist; and therefore the act may and does apply to every
county and section of the State."

The exception contained in section 14 of the road law found
in Acts of 1882–3, p. 144, and that contained in Acts of
1890–1, p. 137, sec. 7, are less obstructive to ·the operation
of the road law as a general statute than that found in the
liquor law.    The exception exempting the citizens of cities
and towns from working the public road outside the corporate
limits, excludes from its operation a full class, and operates
uniformly upon all other classes in the State.    It is obvious
too that the classification is founded in reason.    The provision
found in sec. 14 of the road law (Acts of 1882–3, p. 144), while
declaring that it shall not be construed as repealing the laws
then in force in the State for working public roads, nor shall
interfere with any municipal system of any city or town of
this State, nor with any local law of force in any county of
this State on the subject of working roads, yet it is declared
to be an additional system for any such county and an addi-
tional system for working public roads in this State.    So that
it is obvious, not only that if the special laws for certain coun-

ties in force at the time of the enactment of this system were
repealed, the general system would immediately become oper-
ative in those counties, but that this general system is so
framed that it is declared to be additional to any other system;
and there is no reason why any county or locality having
such a special enactment might not at any time abandon
operations thereunder without a repeal thereof, and adopt and
operate under this general additional system.

The earlier laws found on the statute-books relating to the
retail of spirituous liquors, are embodied in the following acts:
Act approved December 24, 1791, entitled "An act for regu-
lating taverns, and reducing the rates of tavern license," where-
in it is contemplated that, upon taking out such license, the
tavern-keeper may keep and sell among other things, at rates
to be fixed by justices of the inferior county court, spirituous
liquors; it being further provided in that act that the "City of
Savannah and Augusta shall have the sole regulation and
power of governing and directing taverns and granting licenses
within their several jurisdictions."  Cobb's Digest, 1037.  The
act approved December 15, 1809, entitled "An act to regulate
the rates of tavern licenses in this State," after prescribing a
fee of five dollars to be paid for such license, also enacts,
among other things, that "any person, on application and com-
plying with this law, may have license to retail spirituous
liquors without being obliged to keep other public entertain-
ment"; the act further providing that "nothing in this act shall
be construed to control the rates which now are, or may be,
established by the corporations of Savannah or Augusta, or any
other incorporated town in this State."  This proviso would
seem to exclude from the operation of the act all incorporated
towns, regardless of whether the latter had authority to grant
such licenses.  But construed in the light of the penal laws of
the State relative to retailing spirituous liquors without license,
which provided a punishment for persons selling without a
license from the inferior court, etc., except in corporate towns
or cities where by law the corporate authorities are authorized
and empowered to grant such license" (*Floyd* v. *Commis-
sioners*, 14 *Ga.* 357), it would seem that it was contemplated

that the statute should operate in towns or cities where no such authority had been delegated.

By the act approved December 29, 1838, the granting of retail license and sale of spirituous liquors were further regulated in respects immaterial here to be set out.   The substantial provisions of these acts were codified in sections 1377 et seq. of the Code of 1863, except that the proviso relative to towns and cities, as found in the acts, was modified and changed by the codifiers, as will be seen by the following provisions contained in section 1380 of the code above referred to:   "Said provisions do not apply to any corporation, town or city, which, by charter, have power to grant licenses, provided, the fees for licenses are at least as much in said city as are required by law in the county."   The codifications thus made in the Code of 1863 have been brought down through the several revised codes, including the Code of 1882, without material change.

There can be no question that the original act of 1791, although it operated upon almost the entire territory of the State, was local and not general, as it expressly excepted from its operation Savannah and Augusta.   14 L. R. A. 725. Whether a literal and strict construction of the proviso of the statute, as codified, would fix the exception upon such cities and towns only as then had authority to grant licenses, or upon all cities and towns that then had or might thereafter be given such authority, does not materially affect the question. The latter interpretation has manifestly been placed upon the statute by the legislature by the subsequent incorporation of many towns, clothed with authority to so regulate the liquor traffic.   At all events the statute excepts from its operation such cities and towns as already had legislative authority on the subject, and, according to the interpretation of the legislature as shown by subsequent legislation, such cities and towns *only* as the legislature might thereafter give the power.   Under the operation of this statute, therefore, some cities and towns have enjoyed the authority, while others have been without it, and have accordingly been governed by the statute.   For instance, in the case of the *Ordinary of Baldwin County* v. *Retailers of Liquor in Milledgeville,*

42 *Ga.* 325, which arose in 1870, the mayor and council of Milledgeville granted license to certain persons to retail liquors in that city, and received the license fee: thereupon the ordinary of Baldwin county, in which Milledgeville was situate, claimed that the power to charge for and issue such licenses belonged to his office, and that no legal sales could be made till he granted the licenses. Upon this state of facts, it was held that the city of Milledgeville having no express authority to grant licenses, the ordinary had the power to do so; and thus the matter stood until October 16, 1891, when by amendment to its charter the power was conferred. *Wilson* v. *Whelan*, 91 *Ga.* 461, wherein it is held that from thenceforth the city of Milledgeville could divest the jurisdiction of the State over its territory in the matter of granting licenses. It is true that in dealing with this statute prior to the constitution of 1877, this court has referred to it as a general law of the State (42 *Ga.* 326, and cases there cited); but these terms were used without any reference to defining the character of the law — there being no issue as to whether it was general or local — and at a time when there was no constitutional inhibition against passing local laws in a case for which provision had been made by an existing general law.

There are two contingencies, therefore, which determine whether a given town or city will fall within or without the operation of the statute: 1st. Whether the legislature does or does not authorize it to regulate the traffic; and, second, whether such city or town, after the authority has been so conferred, will or will not charge for the license fee at least as much as is required by law in the county. This latter proviso can have no other effect than that of diminishing the chances of uniformity in the operation of the statute. To-day a town is incorporated, with authority to grant licenses; to-morrow another is incorporated with such authority denied; and so on, and ultimately it may develop that one half of the cities and towns in Georgia are operating under the provisions of the code, and the other half under special authority. The statute is of a shifting, vacillating character, holding fast to-day and releasing its grasp to-morrow; is nowhere, but every-

where; strictly sui generis; the handmaid of the legislature, operating anywhere where the legislature has not seen proper, or will not hereafter see proper, to set up other and different machinery. It is lacking in the elements which constitute the uniform and indiscriminating law known to the constitution as a general law, during the pendency of which the legislature is forbidden to pass any local statute affecting any object or subject to which the general law would properly apply. It does not square with the rule laid down by the present Chief Justice, then Associate Justice, in the case of *Lorentz & Rittler* v. *Alexander*, 87 *Ga.* 444, wherein he says: "A law, to be general under this section of the constitution, must operate uniformly throughout the whole State, upon the subject or class of subjects with which it purports to deal. The act under consideration deals with the establishment of county courts. In order for it to be general and have uniform operation throughout the State, it must affect each county in the State. If it excepts one or several, it is not general, and can not have this uniform operation in all counties of the State."

In determining the character of a statute, regard must be had to its subject-matter and the extent and scope thereof. The subject-matter of the act under consideration in the above cited case was the establishment of county courts. There was to be but one county court for each county; and therefore, if the act affected each county to the extent of establishing the court therein, the constitutional requirement would have been met. The subject-matter of the statute now under consideration is somewhat different. It is of a character which in its nature pervades not only every county, but every subdivision and district thereof—in fact, every inch of the territory of the State. As heretofore stated, to be general, it would not be necessary for the statute to operate upon the entire State, but it might be made as a general law to operate upon classified political divisions or localities. However unlimited the power of the legislature of this State to make classifications for the purpose of legislation may be, I apprehend that it will be contended by no one that the statute under review contains earmarks of any intention on the part of the legislature to make this statute apply to classified localities. One distinction

between this law and the local option law heretofore referred to is, that in the latter, during the existence of the local statutes excepted, the legislature would not be at liberty to set up other and different rules by local legislation; but the moment it repealed such local laws for the purpose of setting up others, the suspended general law would fall upon the subject, thus preventing other local legislation; while in the former the legislature would be at liberty from time to time to repeal the provisions applicable to towns and cities operating under local laws, and establish as many new and varied conditions as it saw proper.

But the fundamental deficiency in the statute is that the legislature has excepted from its operation just such cities and towns as it may see proper to make different systems for, thus entirely robbing it of any inherent force by which it might operate uniformly throughout the State. Would it have been less fatal to the county court act if the legislature, in lieu of excepting certain counties by name and others by description, had excepted any and all counties which it had or might thereafter see proper to make different regulations for? The exception in the act is fatal to its uniformity. It may be made to apply to all towns or none; to one or a dozen; it may seize upon one town to-day and let go to-morrow; it may let go one town to-day and seize it to-morrow; the legislature may enlarge or restrict its operation at its pleasure; it may limit it to classes or to portions thereof.

Our conclusion is, that the statute, not being applicable territorially throughout the limits of the State, and it being clearly apparent that it does not involve any features of classification, is not general, but is local or special in its operation; and consequently that the local act, approved September 5, 1879, prescribing the method of granting license to sell spirituous or intoxicating liquors in the county of Bulloch, etc., is not obnoxious to article 1, section 4, paragraph 1, of the constitution of 1877, there being at the time of the passage of that act no general law applicable to the subject with which it dealt.

*Judgment affirmed. Simmons, C. J., dissenting; all the other Justices concurring.*