GREGORY *et al. v.* QUARLES *et al.*

No. 7623. FEBRUARY 10, 1931.

*Jones, Fuller, Russell & Clapp* and *Norman I. Miller,* for plaintiffs.

*J. L. Mayson, C. S. Winn,* and *J. C. Savage,* for defendants.

ATKINSON, J. ▮ The ordinance of the City of Atlanta, adopted March 28, 1929, relating to plumbing, provides for creation of a board of examiners and for appointment of members of the board, and prescribes their powers and duties. Among the latter are the issuance of certificates of proficiency and licenses to persons who have successfully stood examination. In section 6 it is made an offense for any person to follow "the trade of a plumber" as defined by the ordinance, without having successfully passed the prescribed examination. Section 1 provides: "Plumbers must be licensed as such. No person shall engage in or work at the business of plumbing, or follow the trade of a plumber, unless such [person?] shall have theretofore submitted to an examination before a Board of Examiners, hereinafter provided for, and shall have successfully passed the examination as to his experience and qualifications to follow the trade of a plumber. The trade of a plumber is hereby defined to be the trade or calling of working upon or engaging in working about plumbing fixtures in buildings of any kind where sewer connections are being made with city sewers, performing any other work which requires the approval of the plumbing inspector; provided that persons engaged in repair and maintenance work upon plumbing fixtures installed in homes, apartments, and buildings where sewer connections have already been made, and persons engaged in installation or repair of steam, gas, or water pipes shall not be required to stand examination." The words of the proviso just quoted qualify the preceding words defining the "trade of a plumber." Such qualifying words exclude from the definition and from operation of the ordinance all persons coming within such qualifying words. With such persons eliminated, the ordinance applies to all persons as a class "working upon or engaging in working about plumbing fixtures in buildings of any kind where sewer connections *are being made* with city sewers;" but excludes from its requirements persons engaged in repair and maintenance work upon plumbing fixtures installed in homes, apartments, and buildings *where sewer connections have already been made.* If the

connections with the city sewers are originally "being made," the persons doing the work must comply with the ordinance or suffer the penalty prescribed for the offense; but if the work is a matter of repair or maintenance, where sewer connections "have already been made," the persons doing the work are exempted from the requirements and penalties provided for in the ordinance. The ordinance deals with persons engaged in the trade or calling of plumbers as a class. It makes a palpable discrimination against members of that class engaged in original construction where connections "*are being made*" with the sewer system, and in favor of members of the same class, where they are engaged in repair or maintenance work, where connections "*have already been made*" with the sewer system.

In *Felton* v. *Atlanta,* 4 *Ga. App.* 183 (61 S. E. 27), it was said by Powell, J.: "The common inherent right which every citizen has of enjoying the inestimable blessing of laboring at any honest employment he may choose, save only so far as restrictions are necessary to the protection of the public peace, health, safety, and morality, is so well established that limitations thereon are to be strictly construed. Salus populi suprema lex; this, as Judge Bleckley has so happily expressed it (*Green* v. *Coast Line R. Co.,* 97 *Ga.* 34, 24 S. E. 814, 33 L. R. A. 806, 54 Am. St. R. 379), is the whole gospel of public policy, condensed in a single text. Wherever the salus populi ends, restrictions upon the right to labor become unreasonable and violative of common right. Plumbing is a business which affects public health, and is therefore subject to regulation under the police power. Most courts so hold. 1 Abbott on Municipal Corporations, § 123; Singer *v.* State, 72 Md. 464 (19 Atl. 1044, 8 L. R. A. 551); Nechamcus *v.* Warden, 144 N. Y. 529 (39 N. E. 686, 27 L. R. A. 718); State ex rel. Chapel *v.* Justus, 90 Minn. 474 (94 N. W. 124); State *v.* Gardner, 58 Ohio State, 599 (51 N. E. 136, 41 L. R. A. 689, 65 Am. St. R. 785). Nevertheless there is respectable authority for saying that since a city may easily protect itself against the consequences of bad plumbing, by a system of inspecting the work itself, rather than by limiting the number of persons who shall engage in it, those statutes and ordinances which provide that none but examined and licensed persons shall engage in plumbing 'skirt pretty closely that border line beyond which legislation ceases to be within the

powers conferred by the people of the State upon its legislative bodies.' Nechamcus's case, supra, p. 535. Such statutes and ordinances must make no discrimination which is not based upon some reason connected with or growing out of that paramount cause in which they find justification for their enactment." In State *v.* Gardner, 58 Ohio St. 599 (51 N. E. 136, 41 L. R. A. 689, 65 Am. St. R. 785), it was held: "The business of plumbing is one which is so nearly related to the public health that it may, with propriety, be regulated by law, and reasonable regulations tending to protect the public against the dangers of careless and inefficient work, and appropriate to that end, do not infringe any constitutional right of the citizen pursuing such calling. . . But it is essential to the validity of an act undertaking to regulate the business, that it shall, in its requirements, operate equally." That ruling was cited and followed by this court in *Henry* v. *Campbell,* 133 *Ga.* 882 (67 S. E. 390, 27 L. R. A. (N. S.) 283, 18 Ann. Cas. 178). In Gulf &c. Ry. Co. *v.* Ellis, 165 U. S. 150, 160, it was said: "No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. . . It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection." In Chapel *v.* Justus, 90 Minn. 474, it was said: "We consider that there is no reasonable ground for distinction in the application of such a law to cities with or without sewer and water systems. The object to be attained by the act is to prevent unskilled workmen from setting death traps emitting poisonous air. . . The effect of imperfect plumbing is as pernicious, so far as those directly affected are concerned, in a village or town without a sewer or water system, as where such public works exist. It is true that in communities where the larger number of people are centered there may be a violation of the laws of health to a greater extent, but this is merely a difference in degree, and not in character, and the classification based upon such a principle is purely arbitrary."

The above-mentioned discrimination in the ordinance in question renders the ordinance void as violative of article 1, section 1, paragraph 2, of the constitution of this State (Civil Code, § 6358), which declares that "protection to person and property is the paramount duty of government, and shall be impartial and complete." It is also void as violative of that provision of the fourteenth amendment to the constitution of the United States (Civil Code, § 6700), which inhibits denial to persons within the jurisdiction of the State "the equal protection of the laws." The ordinance can not be sustained as a subclassification of persons engaged in the plumbing business. The object of the ordinance and the cause which calls for exercise of the police power is protection of the public in the matter of health. For this purpose efficiency of the plumber is as material relatively to one subclassification as to the other, and the line of distinction between original work and repair work as related to health is not so substantial as will suffice as a basis for a subclassification that will impose the requirements of the ordinance on one class and exempt the other from its application. There should be some reasonable ground for such subclassification, some difference which bears a just and proper relation to the attempted subclassification (Gulf &c. Ry. Co. v. Ellis, supra); some reason connected with or growing out of that paramount cause (public health) relied on for justification of the ordinance. *Felton* v. *Atlanta,* supra. This ruling is in harmony with the decisions of this court in *Sasser* v. *Martin,* 101 *Ga.* 447 (29 S. E. 278), *Crovatt* v. *Mason,* 101 *Ga.* 246 (28 S. E. 891), *Hoffman & Crowell Inc.* v. *Harrison,* 171 *Ga.* 792 (156 S. E. 685), and other similar cases in which the doctrine of classification was discussed and the above-stated principles were applied, though under materially different facts different results were obtained.

The rulings announced in the second and third headnotes do not require elaboration.

*Judgment reversed. All the Justices concur except Beck, P. J., absent, and*

·GILBERT, J., dissenting. I concur in the ruling stated in the first division of the decision, with reference to the constitutionality of the ordinance of the City of Atlanta. I dissent from the ruling in the second headnote, because, under the facts of the case, there was no sufficient ground for the interference of a court of equity,

50

and the exercise of the drastic remedy of injunction. *Long* v. *Railroad Commission,* 145 *Ga.* 353 (supra); *Cathcart* v. *Atlanta,* 169 *Ga.* 791 (151 S. E. 489).