GEELE *et al.* v. THE STATE.

No. 15814.   June 12, 1947.

384

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* and *E. D. Smith Jr.,* for plaintiffs in error.

*Paul Webb, Solicitor-General,* and *J. Walter LeCraw,* contra.

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.) The constitutional question here presented is clearly made and calls for a forthright decision. The statute upon which the constitutional attacks are made is the act of 1910, sections 4, 5, and 6 (Ga. L. 1910, pp. 88, 89). The ground of attack is that the statute is discriminatory against hotels and inns charging

their guests $2 and more, to which the law applies, and in favor of hotels and inns charging their guests less than $2, which are exempt from the requirement of the law that fire escapes on the outside be provided, and that a failure to conform to this requirement is a misdemeanor.

The applicable rule of law, which is the recognized standard by which classification by legislation must be tested, may be stated succinctly as follows. The basis for classification must relate in some degree to the object or purpose of the legislation. The substance of this rule has been repeatedly stated by this court. In *Stewart* v. *Anderson,* 140 *Ga.* 31, 33 (78 S. E. 457), it was stated: "The basis of classification must have some reasonable relation to the subject-matter of the law, and must furnish a legitimate ground of differentiation. Mere arbitrary discriminations are not permissible under the Constitution." This rule was stated in *Cooper* v. *Rollins,* 152 *Ga.* 588, 593 (110 S. E. 726, 20 A. L. R. 1105), in substantially the same language as last quoted. In *Gregory* v. *Quarles,* 172 *Ga.* 45, 48 (157 S. E. 306), this court quoted with approval from Judge Powell in *Felton* v. *Atlanta,* 4 *Ga. App.* 183 (61 S. E. 27), as follows: "Such statutes and ordinances must make no discrimination which is not based upon some reason connected with or growing out of that paramount cause in which they find justification for their enactment." In *Independent Gasoline Co.* v. *Bureau of Unemployment Com.,* 190 *Ga.* 613, 616 (10 S. E. 2d, 58), it was said that "a classification must be reasonable and have a fair and substantial relation to the object of the legislation."

As applied to the equal-protection clause of the Federal Constitution, the Supreme Court of the United States in Southern Railway Co. *v.* Greene, 216 U. S. 400 (30 Sup. Ct. 287, 54 L. ed. 536, 17 Ann. Cas. 1247), stated the rule as follows: "While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed." That court stated the same rule in Asbury Hospital *v.* Cass County, 326 U. S. 207, 214 (66 Sup. Ct. 61, 90 L. ed. 6), as follows: "The legislature is free to make classifications in the

application of a statute which are relevant to the legislative purpose. The ultimate test of validity is not whether the classes differ but whether the differences between them are pertinent to the subject with respect to which the classification is made." 16 C. J. S. 955, § 489, states the rule as follows: "In order to be valid a statutory classification must reasonably promote some proper object of public welfare or interest, must rest on real and substantial differences, having a natural, reasonable, and substantial relation to the subject of the legislation, and must affect alike all persons or things within a particular class, or similarly situated." The rule is stated in practically the same language in 12 Am. Jur. 144, § 478.

The State constitutional provision involved is article 1, section 1, paragraph 2 and is as follows: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." The Federal constitutional provision here invoked is found in our Code, § 1-815, and is a part of the Fourteenth Amendment requiring due process and equal protection of the law.

Opposing counsel in the present case have cited numerous decisions of this and other courts, some sustaining and some overruling the constitutional attacks here made when lodged against laws there considered. We have found no decision where the court rendering the same disagreed with the applicable rule above stated, the decision in each case turning upon the court's interpretation of the facts in the case considered, the law being sustained if the facts as there considered showed want of discrimination and conformity to the above rule in that the classification bore some reasonable relation to the purposes of the legislation.

Since the law here challenged is plain, the constitutional provision invoked is unambiguous, and the rule by which the law must be tested is clearly established by the decisions of the courts, it becomes necessary, therefore, to place the law by the side of the Constitution and determine if it conforms to the requirements thereof. The obvious and single purpose of the law in requiring outside fire escapes upon hotels and inns three stories in height and over is to protect the lives of the occupants against fire. Classification of these structures, whereby the law is made applicable to those of three stories and higher, and inapplicable to such structures when

less than three stories in height, is plainly related to the purpose of the law, in that the lives of the occupants below the third story are not in as much danger as those of the occupants of the third floor and above. But the basis of classification here under attack is not the height of the building, the materials with which the building is constructed, or the surrounding fire hazards. . It is the amount per day which the patrons are charged. If that amount is $2 per day or more, the law is made applicable, and requires that outside fire escapes be provided. . If the charge is less than $2 per day, the law is inapplicable, and no such fire escapes are required. Does this basis upon which the classification is made relate in any conceivable way to the purpose of the law, which is the safety of the guests from the danger of fire? We agree with counsel for the State that the law should be sustained as against the attack here made if any state of facts can reasonably be conceived that would sustain it, and that the existence of that state of facts at the time the law was enacted must be assumed. *Georgia Sou. & Florida Ry. Co.* v. *Adkins,* 156 *Ga.* 826 (120 S. E. 610); Asbury Hospital *v.* Cass County, supra. It is not conceivable, however, that the amount which a guest is charged would affect the danger of fire to which he would be exposed. If two hotel buildings are erected s'de by side, constructed of the same materials, and in all respects equally exposed to fire hazards, the occupants of such buildings would be equally exposed to the danger of fire, regardless of the amount they were charged. If the law here challenged is to be sustained, then the equal-protection provisions of the Constitution, so far as arbitrary classification is concerned, would be without meaning. The State is as much concerned in the preservation of the lives of occupants of hotels and inns who pay less than $2 per day as it is in the lives of those who pay $2 per day and more. It can not constitutionally enforce a law that protects the one and affords no protection to the other solely because of the amount they pay per day.

It has been strongly urged by counsel for the State that the necessity for providing lodging for people unable to pay $2 per day and more was a sufficient reason for making the classification here attacked. As a part of this argument it is contended that to require hotels and inns to provide the fire escapes called for in

this law would necessitate charging guests $2 per day and more. Many decisions of this and other courts are cited to support this contention. Strong reliance is put upon the decision in *Atlantic Coast Line Railroad Co.* v. *State,* 135 *Ga.* 545 (69 S. E. 725, 32 L. R. A. (N. S.) 20), where the act requiring described headlights on locomotives was expressly made inapplicable to tramroads, mill roads, and roads engaged principally in lumber or logging transportation in connection with the mills. That decision sustained the law as against the attack that the classification was arbitrary and offended the Constitution, but this court there pointed out that the exempted roads did not serve the public, and that their operation without the required lights was not as dangerous as the danger attending the operation of ordinary railroads doing a general passenger and freight business for the public, and that this difference was a valid basis for the classification. An examination of all the cases relied upon by the State will, as stated above, disclose that in rendering them the court found a difference relating to the purpose of the legislation as a basis upon which the classification was sustained. The amount charged the guests having no conceivable relation to the danger of fire, to avoid which is the sole purpose of the law, the classification here is arbitrary, rendering the law unconstitutional. Accordingly, the court erred in overruling the demurrer.

*Judgment reversed. Jenkins, C. J., Wyatt, Head, and Candler, JJ., and Boykin, Judge, concur. Bell, J., dissents.*

BELL, Justice, dissenting. Of course, I do not question the proposition that the classification made in this statute must bear some reasonable relation to the purpose of the law, but I think that the classification based on daily rate meets this requirement.

While the statute may be described in general terms as a safety measure, there can be no absolute safety, and it is in reality a *diligence* measure. All hotels must exercise ordinary diligence for the safety of their guests regardless of this statute, and this is true no matter what per diem is charged.

Then the statute comes along and prescribes a specific act, providing fire escapes, which must be done in the way of diligence where the hotel is within the classification stated, so that the mere failure to perform such act would constitute negligence per se.

Whether we consider the specific statutory requirement as stepping up the degree of diligence beyond that of ordinary diligence, or consider it merely as requiring a specific act *within* ordinary diligence, it seems to me entirely reasonable to base such requirement upon a classification as to the amount the guests are required to pay. In other words, the greater the daily rate that is charged, the more able the hotel would be to increase its diligence or to provide safety measures; also the guest may be entitled to more, because of the higher rate that he pays. Different degrees of diligence are required with respect to voluntary undertakings and those based on hire or compensation, as, for instance, the liability of a gratuitous bailee, as compared with that of a bailee for hire. Another illustration would be the degree of diligence owed to one riding by invitation and gratuitously in another person's automobile, as compared with that owed to a pay passenger. Still other examples might be given, where the law makes a distinction between voluntary undertakings and those based on compensation, and it seems to me that valid distinctions may in like manner be made to depend on a differential in the amount of compensation involved.

Furthermore, the General Assembly could reasonably have had in mind that, if all hotels regardless of the rate charged should be required to provide fire escapes, this might make it necessary for them to fix their rates at such an amount that many people needing hotel accommodations could not find the same available at a rate that they were able to pay, or at the maximum rate which they were willing to pay. That is to say, the cheaper hotels, although they might be in other respects reasonably safe as well as sanitary, would be forced either to go out of business, or to increase their rates in order to provide fire escapes.

So, the General Assembly might have considered that the cheaper hotels would fill a public necessity, in that classes of people, who might be either unable or unwilling to pay more than $2 per day for accommodations that would include the benefits provided by this statute, should yet be able to find a place to stay within their means or preference. This it seems to me would conceivably furnish an additional basis for reasonable classification.