**STATE of Missouri ex rel. Jerry LIPPS and Ruth Lipps, his wife, Appellants,**

v.

**CITY OF CAPE GIRARDEAU et al., Respondents.**

**No. 57345.**

Supreme Court of Missouri,

Division No. 1.

March 11, 1974.

Motion for Rehearing or to Transfer to Court En Banc Denied April 8, 1974.

Rush H. Limbaugh, Jr., Limbaugh, Limbaugh & Russell, Cape Girardeau, for appellants.

Howard C. Wright, Jr., City Atty., Cape Girardeau, for respondents.

HIGGINS, Commissioner.

Appeal from denial of writ of mandamus to compel issuance of a plumbing permit. At issue is the constitutionality of Sections 341.010 to 341.080, RSMo 1969, V.A.M.S., relating to the regulation of plumbers and plumbing in cities over fifteen thousand inhabitants, and the Plumbing Code of the City of Cape Girardeau, Missouri.

Mr. and Mrs. Lipps, while in the process of building a two-story, 40 feet by 60 feet, office building on land they own in Cape Girardeau, a city of over fifteen thousand inhabitants, sought to replace an existing clay sanitary sewer line which runs under their building and to do the plumbing work

in the remainder of the building. Neither Mr. nor Mrs. Lipps is a licensed plumber, and the City denied them a plumbing permit for such work for the reason that the Plumbing Code does not authorize the issuance of a plumbing permit to unlicensed persons.

Relators' action to compel issuance of the permit was pleaded and tried on the theory that the owner of property should have a right to do his own plumbing in the course of improving his property. The City defended on the theory that Sections 341.010 to 341.080, supra, require the City to license and regulate plumbing; and, as a consequence, relators cannot be permitted to do plumbing work on the property in question.

Section 341.010 provides that any person working at the business of plumbing in cities of fifteen thousand or more inhabitants, either as master plumber or journeyman plumber, shall first receive a certificate in accordance with Sections 341.010 to 341.080.

Section 341.020 provides that any person desiring to work at the business of plumbing, either as a master plumber or as a journeyman plumber, in cities of fifteen thousand or more inhabitants, shall make application to a board of examiners and be compelled to pass an examination as to his qualifications.

Section 341.030 provides where a person required to take examinations and procure a certificate shall apply.

Section 341.040 provides that a city's board of examiners shall consist of the chairman of the board of health, a master plumber and a journeyman plumber, the latter two to be appointed by the mayor and confirmed by the city council.

Section 341.050 provides for meetings of the board for purposes of examining applicants desiring to work at the business of plumbing; that it shall examine applicants on practical knowledge of plumbing, house drainage and ventilation, and, upon being satisfied of an applicant's competency, shall issue a certificate authorizing the applicant to work at the business of plumbing either as a master plumber or employing plumber or journeyman plumber.

Section 341.060 provides that each city of fifteen thousand or more inhabitants "shall * * * prescribe rules and regulations for the material, construction and inspection of all plumbing and sewerage placed in, or in connection with, any building in each city, and the board of health or proper authorities shall further provide that no plumbing work shall be done without a permit being issued therefor upon such terms and conditions as said city shall prescribe."

Section 341.070 provides that each such city shall create an office of plumbing inspector, and sets the qualifications for such officer.

Section 341.080 provides that persons in violation of Sections 341.010 to 341.080 shall be deemed guilty of a misdemeanor.

Cape Girardeau, in obedience to the mandate of Sections 341.010 to 341.080, and particularly Section 341.060, duly enacted a Plumbing Code, the last such enactment bearing an effective date of April 3, 1957. The Code consists of Chapter A —Definitions; and Chapters 1 through 16 covering administration; general regulations; materials; joints and connections; traps and cleanouts; interceptors, separators, and backwater valves; fixtures; hangers and supports; indirect waste piping and special wastes; water supply and distribution; drainage system; vents and venting; storm drains; inspections, tests, and maintenance; air gaps, backwater preventers, and drinking fountain; constitutionality, repeal, and publication.

Chapter 1, Section 25 of the Code, provides: "No permit to install plumbing fixtures shall be issued to other than regularly certificated and bonded plumbing contractors and master plumbers, except that a

journeyman plumber may be issued a permit in the name of a regularly certificated and bonded plumbing contractor or master plumber." Section 25.1 provides: "Any permit required by this code may be issued to any person to do any work regulated by this code in a single-family dwelling used exclusively for living purposes, * * * provided the person is a bona fide owner of such dwelling and that the same will be occupied by said owner * * *." Section 26 provides: " * * * Repairs involving only the working parts of a faucet or valve, the clearance of stoppages, repairing of leaks, or replacement of defective faucets or valves may be made without a permit provided no changes are made in the piping to the fixtures."

Other sections of the code bearing upon the questions presented and of value in their resolution include Section 2.14 with respect to ratproofing of exterior and interior openings for the passage of piping, and Section 11.1.3 requiring drains within buildings, when underground, to be of cast-iron soil pipe.

Appellants contend (I) that the court should have declared Sections 341.010 to 341.080 unconstitutional and ordered the City to issue them a plumbing permit in that: A. The statute violates Article 3, Section 40, Missouri Constitution, V.A.M.S., "because it is special interest legislation creating monopolistic advantages and conditions among a particular class of individuals, which special interest legislation has no reasonable relationship to health, welfare, safety or any other justifiable exercise of the police power of the State of Missouri"; B. The statute violates the Fourteenth Amendment, United States Constitution and Article 1, Section 2, Missouri Constitution, "because it discriminates in its application to cities with population in excess of 15,000 while not applying to cities of population less than 15,000. Said classification is arbitrary, unreasonable and without proper relationship to health, safety and welfare"; C. " * * * because the licensing of other professional groups (i. e.,

doctors, lawyers, electricians and other building trades) does not prohibit an individual from doing on behalf of himself that work which is normally done by professional groups. The occupation of plumbing bears no greater direct relationship to the health and welfare than does the work of such other professional groups"; and D. " * * * because, by its inherent concept of licensing of plumbers, it deprives individuals of property without due process of law by prohibiting them from performing plumbing work on their own property."

Appellants contend (II) that the court should have declared Section 25, Chapter 1, of the Plumbing Code unconstitutional in that: A. Section 25 violates the Fourteenth Amendment, United States Constitution, and Article 1, Section 10, Missouri Constitution, "because it mandates the taking of property without due process of law by prohibiting the issuance of plumbing permits to any person or group other than plumbing contractors and master plumbers, thereby prohibiting an individual from performing work on property belonging to him"; B. Because Sections 25 and 25.1 "represent an arbitrary and unreasonable classification unrelated to health, welfare and safety, thus * * * denying equal protection of law"; C. Requirements of Section 25 are "superfluous and unnecessary in view of the requirements elsewhere in the Plumbing Code that all plumbing be subject to inspection * * *"; D. Section 25 represents "an unreasonable, unwarranted and undue extension of Sections 341.010–[341].080 * * * because said statute only requires the licensing of those persons 'engaging or working at the business of plumbing,' while said ordinance section requires the issuance of permits only to master plumbers in the installation of all plumbing fixtures"; E. Section 25 is inconsistent with Section 26 "which allows repairs to be made by unlicensed personnel without any requirement of inspection. Section 25 therefore is discriminatory * * *"; F. The Plumbing Code

"represents an arbitrary and unreasonable classification * * * in that other work in construction is not bound by such strict requirements for licensing and inspection and the classification inherent in said plumbing code does not rest upon any real difference which bears a reasonable and just relationship to the acts with respect to which the classification is made"; G. The Plumbing Code violates equal protection of the law "because the licensing of other professional groups * * * does not prohibit an individual from doing on behalf of himself that work which is normally done by professional groups * * *." (Same reason as I–C.)

Appellants' position is further stated and argued with reference to each point and subpoint.

Under I–A, they assert that the plumbing board is a self-perpetuating board and no persons other than plumbers or those interested in the business have any say; that inspection is the key to satisfactory plumbing work; that there is no rate-regulating body and permitting an owner to do his own work is the deterrent to plumbers setting their own fees; that the Plumbing Code places an owner at the mercy of the licensed plumbers in the City.

Under I–B they assert that the statute discriminates between persons living in cities of over fifteen thousand inhabitants and persons living in cities of less than fifteen thousand inhabitants because he could do his own plumbing only if he moved to a city of less than fifteen thousand in population; that such legislation could have been passed only by people having a special interest such as union plumbers or plumbing contractors.

Under I–C and D and II–A they assert that they can do their own building, electrical work, and gas installation, but the statute prohibits them from doing their own plumbing, that they are thus unfairly denied their individual freedom, and that such denial takes a property right from them.

Under II–B, C, and D they assert that certification as a journeyman plumber or master plumber is no guarantee that the health, welfare, and safety of the public will be promoted; only an inspection can insure that plumbing work is properly done. Carpenters, masons, bricklayers, and electricians can work without permits, and the hazards from faulty electrical work are deemed to be covered by inspection.

Under II–E they assert that Sections 25 and 26 are in conflict because Section 26 permits some work (repairs) to be done without a permit, and that not all plumbing, e. g., installing laundry dryers and washers and factory maintenance, requires a permit.

No further assertions are made with respect to II–F and G.

The law in Missouri relating to plumbers and plumbing, now Chapter 341, RSMo 1969, has been in force and effect in virtually the same form as that of its original enactment in Laws 1903, pp. 82–84. Its constitutionality has been tested and established on previous occasions. In Ex parte Smith, 231 Mo. 111, 132 S.W. 607 (1910), petitioner had been found guilty of carrying on the business of a plumber without having been licensed as required by an ordinance of the City of St. Louis. Petitioner recognized that the ordinance was founded on Laws 1903, supra, and contended, among other things, that the Act was in violation of his constitutional right to life, liberty, and property, and that the ordinance was outside the powers of the City and was unreasonable and void. These contentions are not in the detail of present appellants' contentions and arguments; however, their substance is the same and the answer previously given is adopted in denial of this appeal:

"* * * the city * * * had the power to license and regulate the business of plumbing, unless, in so doing, it violated the Constitution of the state in interfering with the constitutional right of

the defendant to his natural rights to the enjoyment of the gains of his own industry, and deprived him of his property without due process of law. The natural right to health, liberty, and pursuit of happiness secured by our Constitution and Bill of Rights is not an absolute right. The individual must sacrifice a part of his particular interest if the sacrifice is a necessary one in order that organized society as a whole shall be benefited. The restraint of personal action is justified when it obviously tends to the protection of the health and comfort of the community, and the individual's constitutional right is not thereby violated. While there may be some cases to the contrary, the great weight of authority in this country is to the effect that the business of plumbing is so intimately connected with the public health, especially in large centers of population where scarlet fever, typhoid fever, diphtheria, and other diseases are apt to become epidemic, as to be the proper subject of police regulation. * * * The right of a citizen * * * to follow any legitimate business, occupation or calling * * *, to use such right as a means of livelihood, is fully secured, but it is subject to the paramount right of the state to impose upon the enjoyment of such a right a reasonable regulation which the public welfare may require. In People v. Warden of the State Prison, 144 N.Y. 529, 39 N.E. 686, * * * it is said: 'We know that important plumbing work calls for plans and designs, and requires skilled supervision. It is some guaranty of these requirements being met that the plumber, employed upon the particular work and who must employ plumbers and assistants in carrying out the work * * * is competently certified, and, therefore, held up to be skilled and capable in his business. * * * the plumber's work is not only one calling for the exercise of skill, but it is done in places which are dark or more or less inaccessible. The Legislature in creating a system by which the qualifica-

tion of plumbers * * * aids the citizen * * * in placing his confidence, and furnishes some safeguard against the performance of bad and unsafe work. That the men employed by a master plumber may prove untrustworthy in practice, or may neglect the work * * *, certainly can furnish no ground for attacking the purpose of the statute; for the presumption and the natural probability are the other way * * *.'

■ "In State v. Gardner, * * * 58 Ohio St. 599, 51 N.E. 136, * * * the Supreme Court of Ohio * * * said: 'True it is that the business of the plumber is not ranked with the learned professions * * *. Yet a certain degree of training and experience is absolutely necessary to render one intelligent as to the groundwork of his calling as well as competent and skillful in its exercise. He is required to put into our dwellings and public buildings tanks, pipes, traps, fittings and fixtures for the conveyance of gas, water, and sewage, which require, among other essentials, the keeping out and protection against gases which are destructive of health and not infrequently of life itself. That it is of the highest importance that the drainage and sewerage of our public buildings and private tenements should be as skillfully planned and executed as the modern standard of science admits would seem not to be open to question.' * * * the business of plumbing [i]s so intimately connected with the public health and comfort of the citizens that there ought not to be any doubt that its regulation falls within the power of the Legislature in the exercise of its police power. The ordinance does not restrain individuals from working as plumbers, it simply requires the man who holds himself out to do this important work shall be fitted for it, and the ordinance imposes no unreasonable burden upon him." Ex parte Smith, supra, 1. c. 132 S.W. 609–610.[1] See Anno: Validity

I. Ex parte Smith has been questioned (Keane v. Strodtman, 323 Mo. 161, 18 S.W.2d 896, 898 (banc 1929)) with respect to application of a rule of statutory construction; however,

of regulations as to plumbers and plumbing, 36 A.L.R. 1342; Anno: Plumbing Regulations—Validity, 22 A.L.R.2d 816. Note also that there is no discrimination against Mr. and Mrs. Lipps in these circumstances because the proscription against doing plumbing work without a license falls equally upon all unlicensed persons. Nor is there any vice in the statute by reason of its application to cities of fifteen thousand or more inhabitants because conditions which exist in such cities, which are absent from others, is a basis for reasonable distinction in regulations governing plumbing. City of Louisville v. Coulter, 177 Ky. 242, 197 S.W. 819, 822 [3] (1917).

■ As noted in Stine v. Kansas City, 458 S.W.2d 601, 609 (Mo.App.1970), the duties imposed upon cities of fifteen thousand or more inhabitants by Sections 341.-010 to 341.080 are mandatory; the grant of power relates to a subject affecting public health and welfare, and is a delegation to such cities of the state's police power with respect to the business of plumbing. The duties imposed upon the affected cities by the statute is to protect persons living in populous areas from the lurking threats of contagion, disease and epidemics by requiring those who do plumbing work to be properly qualified.

Perhaps, as argued by appellants, contagion and epidemics are not the threat they were at the time the statute was enacted; yet there can be little doubt that proper plumbing methods have played and continue to play an important part in their control. There are examples in the Plumbing Code of Cape. Girardeau and in evidence in this case that demonstrate the reasonability of the control of plumbing undertaken by the City under the mandate of the State. Section 2.14 of the Code makes a practical requirement of rat-proofing; Section 11.1.3 regulates the type of piping to use under buildings. Improper underground facilities and venting can and do

result in explosion in public and building sewer systems. In particular, relator Jerry Lipps placed a new two-story office building over an existing clay sewer line which carries sewerage from an existing building to the city sewer system. The Code calls for cast-iron soil pipe as a material less likely to become damaged in the event a concrete floor cracks or shifts. Relator's position demonstrated a lack of understanding of the value of this requirement, and that presents a good argument in favor of prohibiting unlicensed plumbers from doing plumbing work in and under buildings. By combination of statute and Code the state imposes reasonable restraints upon the business of plumbing to protect the public against careless and inefficient plumbing work. Thrift Hardware & Supply Co. v. City of Phoenix, 71 Ariz. 21, 222 P.2d 994 (1950).

Appellants make two citations which warrant consideration. In Schroeder v. Binks, 415 Ill. 192, 113 N.E.2d 169 (1953), cited under I–A, the general power of the state to regulate plumbing and plumbers for the protection of public health was not disputed. At issue was a statutory requirement of supervision by master plumbers of all plumbing work done by journeymen or apprentices which the court found not related to consideration of public health. No such requirement is made by Sections 341.-010 to 341.080, supra. In Gregory v. Quarles, 172 Ga. 45, 157 S.E. 306 (1931), cited under I–B and II–B and E, an ordinance requiring examination of plumbers, working when sewer connections are being made but not where already made, was void as denying equal protection of the law. Discrimination was present because the difference between plumbing work in the two instances was not so substantial as to support separate classification for the purpose of imposing the burden on one and excusing the other. It has been demonstrated previously that neither the statute,

the holding essential to this appeal stands unimpaired as the definitive declaration on this subject. Stine v. Kansas City, 458 S.W.2d 601, 606 (Mo.App.1970).

in its population provision, nor Sections 25 and 25.1 of the Code presents a similar discrimination.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.