Charles A. GREEN et al., Appellees,

v.

Rose J. SHAMA and Gary F. McCormack, Appellants.

No. 55775.

Supreme Court of Iowa.

April 24, 1974.

Joe Cosgrove, Sioux City, for appellant, Gary F. McCormack.

Harry H. Smith, Sioux City, for appellees.

MASON, Justice.

This is a declaratory judgment action brought by Charles A. Green, Harold L. Erichsen and Ruth White Hamann as representative members of a class consisting of licensed barbers in the state of Iowa against Rose J. Shama and Gary F. McCormack, both licensed cosmetologists, but not licensed barbers, practicing in Sioux City who have cut adult men's hair for money and advertised in the Sioux City Journal (McCormack) that they could do so.

Plaintiffs seek to have the court declare sections 157.1 and 158.2, The Code, are constitutional.

Only McCormack appeared and filed answer in which he asserted as an affirmative defense plaintiffs are not entitled to the declaratory relief sought because their rights, status and legal relations are not affected by sections 157.1 and 158.2.

The trial court held plaintiffs were proper parties to seek and obtain declaratory relief under rule 262, Rules of Civil Procedure; sections 157.1 and 158.2, The Code, are constitutional as valid exercises of the police power of the state of Iowa and concluded that contrary to defendant's contention the licensing laws do not compel defendant to discriminate against male members of the public in a manner contrary to the provisions of chapter 105A, The Code, 1971, now chapter 601A, The Code, 1973.

Defendant appeals assigning as issues for reversal: (1) error in holding plaintiffs were proper parties to test the constitutionality of the statutes by a declaratory judgment action; (2) in concluding sections 157.1 and 158.2 are constitutional; and (3) in holding these sections do not force defendant to violate Iowa's Public Accommodations Law, chapter 105A, The Code.

From the record we learn that differing approaches have been taken to men's and women's hair styling because of physiological differences between the sexes. Females have finer features due to the bony structure of the face and to the presence of a layer of fatty tissue which covers their bodies but not a male's. The female

hairline differs due to the absence of sideburns and facial hair; a female's hair does not grow as close to the top of the ear or as far down the neck as a male's. The female hairline grows straight across the forehead and does not recede like the male's. Men suffer from baldness far more than women.

Adult male features change more than a female's because of facial hair, sideburns and exposure to the elements at work. Changes in a female's hair occur during menstrual and pregnancy periods. Health hazards are generally of greater incidence in cutting men's hair because they often come to a barber from performing manual labor and thus there are higher probabilities of spreading contagious diseases; the same hazards are not generally present in regard to women.

Because of these differences hair styling between the sexes differs. As a general rule, male hair has been cut short and, even if cut long, has a square, box-like appearance designed to look masculine. Female hair styles are long and, even if short, are fashioned to give an oval, attractive, feminine look.

Cosmetologists and barbers undergo different training. To be licensed in Iowa a person must attend a barber school and receive 1800 hours of training, apparently about a six-month course. Almost 90 percent of this training is concerned with the cutting of men's hair. At barber school a person becomes proficient with the use of barber shears, barber clippers, straight edge razor, blow wavers, hot combs and other hair styling instruments. After barber school there is an 18-month apprenticeship period served under a licensed barber. Ninety-five percent of this period is spent cutting men's hair.

An Iowa cosmetology course consists of 2100 hours, 75 percent of which involves giving shampoos and sets to women. In a course taken by one of plaintiffs' witnesses, 214 hours were spent in hair shaping, only on women, also shortening and thinning of hair was done but again only on women. No work was done on males and very little dry, fine tapering of hair as done on males was performed. No apprenticeship is required; a graduate may go directly to his own shop. Although only one witness testified on the full training of future cosmetologists, apparently this is their normal training. The chief instruments instructed about are a small shear and a small Weck safety razor with guard.

Different sanitary standards are apparently applicable to the two professions; plaintiffs' witness, Foster, a licensed barber who also attended a cosmetology school, stated that cosmetologists are not required to have individual lavatories, often do not wash their hands before serving clients, often use unsanitary brushes and do not normally have the wet sterilizing solutions and alcohol burners for working instruments used by barbers. McCormack gave adverse statements to much of this, relying on the fact his salon passed cosmetology licensing standards; he also enumerated his personal hygenic habits. No rules or standards of sanitary conditions for either barbers or cosmetologists were admitted as evidence.

Two adult males had their hair cut by each defendant for a fee. One of plaintiffs' witnesses went to the Magic Mirror beauty shop after seeing an advertisement in the Sioux City Journal. He was serviced by one Felix (apparently actually McCormack) for a fee. Felix did not wash his hands prior to working on this witness nor did he use clean linens or a neck strip, both of which are allegedly required by Iowa law. There were no visible means of disinfecting instruments, shears or combs, nor were any disinfected prior to use, also allegedly contrary to Iowa law.

In recent years there has been a trend towards longer hair for men. A defense witness testified that he was unsatisfied with the way barbers cut his hair and went to McCormack, of whom he had no complaints.

The thrust of plaintiffs' testimony was that cosmetologists are untrained, vis-a-vis barbers, to cut men's hair, even in the now popular longer styles. Defendant contends there is no difference in hair styling between men and women now that men wear their hair longer, and a cosmetologist is equally able to cut men's hair.

I. Defendant first contends plaintiffs are not proper parties to bring this declaratory judgment action. He argues since statutes are presumed to be constitutional, State v. Vick, 205 N.W.2d 727, 729 (Iowa 1973); Brown Enterprises, Inc. v. Fulton, 192 N.W.2d 773, 776 (Iowa 1971); Stanley v. Southwestern Com. Col. Merged Area, Etc., 184 N.W.2d 29, 32 (Iowa 1971); Lewis Consolidated Sch. Dist. v. Johnston, 256 Iowa 236, 244, 127 N.W.2d 118, 123, it is unreasonable to contend a plaintiff could seek to have a statute declared constitutional; thus, the only question which could be presented by such an action would be *invalidity* of the statute and no controversy concerning the constitutionality of sections 157.1 and 158.2 is presented by the pleadings.

Plaintiffs contend a justiciable controversy exists between the parties regarding the validity of these statutes since defendant interpreted the licensing laws as unconstitutional and in turn engaged in conduct which infringed plaintiffs' rights under section 158.2. They insist that both the pleadings and evidence presented a substantial conflict between the parties which centered upon the validity of Iowa licensing laws. In support of this contention plaintiffs rely upon the facts alleged in their petition regarding defendants' conduct which presented an open challenge to the constitutionality of the statutes involved.

■ The first requirement for the bringing of a declaratory judgment action is that a justiciable controversy actually exists. Rule 261, R.C.P., empowers the court to grant declaratory judgments in ap-propriate circumstances which are seen from the following quote:

"The basic and fundamental requirement under rule 261 is that the facts alleged in the petition seeking such relief must show there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment. There must be a justiciable controversy as distinguished from a mere abstract question." McCarl v. Fernberg, 256 Iowa 93, 95, 126 N.W.2d 427, 428. See also Wesselink v. State Dept. of Health, 248 Iowa 639, 643, 80 N.W.2d 484, 486; Wright v. Thompson, 254 Iowa 342, 117 N.W.2d 520; Katz Investment Co. v. Lynch, 242 Iowa 640, 648, 47 N.W.2d 800, 805; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826; Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959–960, 22 L.Ed.2d 113.

The above cases also stand for the corollary principle that a mere abstract question will not support an action for declaratory judgment.

■ Rules 261 and 262, R.C.P., are to be liberally construed in order to carry out their purpose. Lewis Consolidated Sch. Dist. v. Johnston, 256 Iowa at 241, 127 N.W.2d at 122; Gradischnig v. Polk County, 164 N.W.2d 104, 107 (Iowa 1969).

In *Gradischnig* the court said: "Finally, rules 261–262, R.C.P., relative to declaratory judgments, must be accorded a liberal construction to effectuate their purpose in order to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations. * * * [citing authority]." *Gradischnig* was a class action by residents and voters alleging voter discrimination in supervisor districts. An alleged denial of equal protection together with the relevant facts, showed existence of a justiciable controversy sufficient to sustain an action for declaratory judgment. *Lewis*, supra, was an action seeking a de-

termination that a statute was unconstitutional.

A justiciable controversy was further elaborated on in Wesselink v. State Dept. of Health, 248 Iowa 639, 80 N.W.2d 484. This was an action by a group of chiropractors to construe the word "physician" as used in a statute. They asked that the court uphold their contention chiropractors came within the meaning of the term which would further require they be sold vaccines at cost. The trial court dismissed the petition for failure to present a justiciable controversy. In reversing and remanding the case the court stated:

" 'The difference between a mere abstract question and a controversy has been called one of degree which is difficult to define precisely. The basic question is said to be whether the *facts alleged show there is a substantial controversy* between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment', citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829.

"We are not concerned with the actual proof here, for the question we have to decide is whether or not under the pleadings plaintiffs have stated a cause in which material and competent evidence that would justify the relief demanded could be received.

"Our declaratory-judgment rules necessarily deal with present rights, and we must examine carefully each petition to determine whether such legal right is in issue between the parties litigant. It has often been said it is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative. * * *

" * * *

"We search, then, for an 'antagonistic assertion and denial of right' and, if found and the proper allegations appear, the court may then entertain the question of whether the plaintiffs' claim is proper and justified. * * * An inspection of the pleadings to determine whether they show antagonistic positions is necessary and proper. * * * By an inspection of the pleadings in the case at bar, can we determine from plaintiffs' petition alone the fact that the positions or contentions of the parties are substantial and antagonistic?

" * * *

"Relief may also be denied if no irreparable injury is apparent, but such determination must usually await a full hearing on the matter. Certainly the purpose of this relief is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relationship either as to present or prospective obligations. If that purpose appears, the court should stabilize, if possible, the legal relations of the parties. * * * [citing authorities]." (Emphasis in the original) *Id.* 248 Iowa at 643–645, 80 N.W.2d at 486–487.

In *Wesselink* plaintiffs had further alleged they were being discriminated against. Thus, the court found the issue of law raised was whether the pleadings proved a real controversy between the parties involving a legal interest affected by defendants' construction of the statute. The court found the pleadings did raise such a real controversy. However, reliance was placed on the discrimination allegation.

If we correctly understand defendant's argument in support of this assignment it is based on the contention plaintiffs are not proper parties to bring this action inasmuch as no challenge to the validity of sections 157.1 and 158.2 was presented to the court by the pleadings; thus, the requirement that a justiciable controversy exists between the parties as distinguished from a mere abstract question has not been met.

It is to be noted defendant did not make this attack, so far as the record discloses, by a motion to dismiss as was done in

*Wesselink* and Wright v. Thompson, 254 Iowa at 344, 117 N.W.2d at 522.

This statement from 2 Anderson on Declaratory Judgments, p. 1011, appears relevant: "Whether or not there is a justiciable controversy justifying the granting of a declaratory judgment is a factual question, and it is immaterial whether it is established by the pleadings or by evidence." The foregoing statement was quoted with apparent approval in Wesselink v. State Dept. of Health, 248 Iowa at 645, 80 N.W. 2d at 487.

Nevertheless, in light of the statements of law set forth earlier from decided cases, our examination is first directed to an inquiry whether under the pleadings plaintiffs have alleged facts which would tend to establish a substantial controversy existed between the parties regarding validity of these sections which would justify granting a declaratory judgment.

■ It is the court's view there is merit in plaintiffs' position that both the pleadings and evidence presented a substantial conflict between the parties which centered upon the validity of these licensing laws.

Plaintiffs alleged both defendants were unlicensed barbers but nevertheless had cut adult men's hair for money in an unlicensed barber shop and that McCormack had advertised he could legally perform barber services and had solicited adult male patrons for haircutting services, which false advertising by an unlicensed barber was contrary to Iowa law. Plaintiffs also alleged defendant construed sections 157.1 and 158.2 as unconstitutional infringements upon his freedom to pursue his cosmetology trade.

It appears obvious these allegations of fact would permit material and competent evidence to be received which would tend to establish a substantial controversy existed between plaintiffs and defendant as to the validity of the licensing statutes.

Review of the record discloses substantial evidence in support of plaintiffs' contention cosmetologists were illegally cutting adult men's hair contrary to the exclusive rights of licensed barbers to do so.

The requirement there be an antagonistic assertion and denial of right is met by plaintiffs' allegation in their petition sections 157.1 and 158.2 provide for the *exclusive* right of licensed barbers working in a licensed barber shop to cut the hair of adult males. A fair inference to be drawn from this allegation is that the statutes deny that right to cosmetologists.

From our de novo review of this equitable matter, rule 334, R.C.P., we conclude plaintiffs were proper parties to bring this declaratory judgment action since there was a justiciable controversy actually existing between the parties with adverse legal interests of sufficient immediacy and reality as to the validity of sections 157.1 and 158.2 to warrant a declaratory judgment. The assignment is without merit.

II. Defendant argues his second and third assignments of error in one division in which he asserts as brief points: (1) the provisions of sections 157.1 and 158.2, The Code, restricting cosmetologists to practicing their profession on women and children only is in violation of the equal protection clause and of the due process clause of amendment 14 of the United States Constitution and Article I, section 9 of the state constitution; and (2) it is an unfair and discriminating practice for a cosmetologist to deny his services and accommodations to the male public, and to require cosmetologists to thus act would force cosmetologists to violate the Civil Rights Act, which is now chapter 601A, The Code, 1973.

■ It is a well-settled rule that one who attacks a statute on constitutional grounds must negate every reasonable basis upon which it could be sustained. State v. Abodeely, 179 N.W.2d 347, 354 (Iowa 1970); Peel v. Burk, 197 N.W.2d 617, 619 (Iowa 1972); and State v. Vick, 205 N. W.2d at 729.

III. Stated somewhat differently the contention urged in defendant's first brief point is that a restriction prohibiting cosmetologists from rendering the same services to adult males which they render to women and children is discriminatory and the discrimination is unreasonable, arbitrary and capricious.

Defendant maintains styling and cutting of men's hair in the longer fashion which is in vogue with some males is not a pursuit which is per se harmful or detrimental to these persons or to the public or society in general. He urges that a tradesman who is in all respects fit to style or cut long hair and provide such services as bleaching, dying and waving for women and children is likewise fit to lend the same services to adult males.

■■ A citizen has a right to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and work where he wishes, to earn his livelihood by any lawful calling and to pursue any livelihood or advocation. Allgeyer v. State of Louisiana, 165 U.S. 578, 589–591, 17 S.Ct. 427, 431, 41 L.Ed. 832, 836; Meyer v. Nebraska, 262 U.S. 390, 399–400, 43 S.Ct. 625, 626–627, 67 L.Ed. 1042, 1045. This right is, of course, subject to the police power of the state to enact laws essential to the public safety, health, or morals. To justify the state in exercising such authority, however, it must appear the public interest requires such interposition and that the means are reasonably necessary for accomplishing the purpose and not unduly oppressive to individuals. It is thus a fundamental precept of constitutional law that matters within the police power of the state relating to public health may be regulated by the legislature. Meyer v. Nebraska, supra; Allgeyer v. State of Louisiana, supra; New State Ice Co. v. Liebmann, 285 U.S. 262, 273, 52 S.Ct. 371, 372, 76 L. Ed. 747, 751; Clark v. District Court, 255 Iowa 1005, 1008, 125 N.W.2d 264, 266; City of Osceola v. Blair, 231 Iowa 770, 2 N.W.2d 83.

In City of Osceola v. Blair, 231 Iowa at 772, 2 N.W.2d at 84, citing Scully v. Hallihan, 365 Ill. 185, 191, 6 N.E.2d 176, 179, the court stated: " 'It is one of the fundamentals of our democratic form of government that every citizen has the inalienable right to follow any legitimate trade, occupation, or business which he sees fit. His labor is his property, entitled to the full and equal protection of the law under the due process clause of the Federal Constitution. It is also embraced within the constitutional provision guaranteeing to everyone liberty and the pursuit of happiness. Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832.' "

Meyer v. Nebraska, 262 U.S. at 399, 43 S.Ct. at 625, 67 L.Ed. at 1045, in speaking of the state's inability to deprive any person of life, liberty or property without due process of law, stated:

" * * * Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, * * *."

■ However, the provisions of amendment 14 prohibiting a state from depriving any person of life, liberty or property without due process of law does not prohibit the state from exercising its police power to pass and enforce laws as will benefit the health, morals, and general welfare of the people.

City of Osceola v. Blair, 231 Iowa at 772–773, 2 N.W.2d at 84, states: " ' * * * This right to pursue any trade or calling is subordinate to the right of the state to limit such freedom of action by statutory regulation where the public health, safety, or welfare of society may require. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1459.' " See also Breard v. City of Alexandria, La., 341 U.S. 622, 631–633, 71 S.Ct. 920, 927, 95 L.Ed. 1233, 1242–1243 and Cedar Mem. Park Cem. Ass'n. v. Personnel Assoc., Inc., 178 N.W.2d 343, 349 (Iowa 1970).

■ Any use of the police power must be reasonable and not arbitrary and capricious. "It has been frequently held that the due process clauses * * * do not limit the exercise of the state's police power unless the legislation is an arbitrary, unreasonable, or improper use of such power. * * * [citing authorities]." Burlington and Summit Apts. v. Manolato, 233 Iowa 15, 20, 7 N.W.2d 26, 29.

Turning again to City of Osceola v. Blair, 231 Iowa at 773, 2 N.W.2d at 84, we find this statement: "However, in those instances where the police power is invoked to regulate and supervise a legitimate occupation the restraint imposed must be reasonable. * * * In order for such regulations to be lawfully imposed upon the constitutional rights of the citizen to pursue his trade or business, the act passed under the guise of a measure to protect the public health, comfort, or welfare must have a definite relation to ends sought to be attained. Banghart v. Walsh, 339 Ill. 132, 171 N.E. 154.'" See also Pierce v. Incorporated Town of LaPorte City, 259 Iowa 1120, 1124, 146 N.W.2d 907, 909–910 and Baker v. Daly, 15 F.2d 881, 882 (D.C. Or. 1926).

State v. Thompson's School, 226 Iowa 556, 561, 285 N.W. 133, 135 has this quote: " 'The right thus granted is, of course, subject to the police power of the state to enact laws essential to the public safety, health, or morals; but, to justify a state in exercising such authority, it must appear that the interest of the public requires such interposition, and that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive to individuals.' "

In view of the foregoing statements of principle the problem is whether the statute which prevents cosmetologists from cutting adult men's hair is reasonably related to the health and safety of the populace and reasonably suited to accomplish the purpose of protecting such health and safety.

Defendant's argument that the licensing laws are discriminatory is based on the assumption these laws limit competition under the guise of protecting the health and safety of the male public, needlessly interfere with a lawful occupation, are class legislation and hence are arbitrary, capricious and unreasonable.

The argument fails where it appears the legislature could reasonably have concluded differences inherent in cutting men's hair and women's hair posed special health and safety dangers which required different regulations for cutting men's hair from women's haircutting and that the statute limiting the cutting of adult men's hair to licensed barbers in a licensed barber shop would help to attain that end by providing standards of competency.

The statute is discriminatory only in the sense that any licensing system discriminates by making specified activity lawful only for those persons who qualify for and obtain a license.

■ Certain physiological differences between men and women in regard to their hair, face and scalp are unchanging no matter how long men's hair styles come to be. This factor constitutes a reasonable basis upon which the legislature could have based its decision to statutorily regulate the barbering and cosmetology occupations as it did. The health and safety of the populace would reasonably be held to require the safeguard of permitting only those persons with specifically designated training to cut adult men's hair. It was, and still is, a reasonable exercise of the police power to limit the cutting of adult men's hair to those specifically trained to do such. The prohibition of cosmetologists from cutting adult men's hair is a natural corollary to this valid exercise of the police power. There is, therefore, no violation of defendant's right to due process. As tending to support our position see Bone v. State Board of Cosmetology, 275 Cal.App.2d 851, 80 Cal.Rptr. 164, 168.

IV. Defendant also challenges the constitutionality of sections 157.1 and 158.2 on equal protection grounds.

He argues that if a male desires long hair of a certain style requiring coloring, permanent waving, bleaching or styling which he feels can best be obtained from a practicing cosmetologist, it should be his election. Defendant argues a statute which does not allow a member of the male public such freedom to elect is discriminatory to the male public.

In support of his position defendant relies on Bolton v. Texas Board of Barber Examiners, 350 F.Supp. 494 (D.C.Dallas Div.). The per curiam opinion issued by a three-judge district court declaring a part of the Texas law unconstitutional was made on an agreed set of facts and sets out little more than the decision itself with no showing of the court's reasoning. Its precedential value is not persuasive.

■ Insofar as defendant contends at this point that a statute which does not allow an adult male to go to a cosmetologist for barbering services is a violation of the equal protection clause, attention is directed to the principle that no one may question the constitutionality of a statute unless he can show he is injured by it. In other words, a litigant may only assert his own constitutional rights and immunities. Lewis Consolidated Sch. Dist. v. Johnston, 256 Iowa at 242, 127 N.W.2d at 122.

The problem was considered in Vietnam Vets. Against War v. Veterans M. Aud. Com'n., 211 N.W.2d 333, 335 (Iowa 1973), where the court said:

"It is well established that the constitutionality of a statute may not be attacked by one whose rights are not, or are not about to be, adversely affected by the operation of the statute. A showing only on such interest in the subject as the public generally has is not sufficient to warrant the exercise of judicial power to determine the constitutionality of a statute. * * * [citing authorities]."

In addition to several decisions of this court two recent opinions of the Supreme Court and 16 Am.Jur.2d, Constitutional Law, section 119, pp. 310–312 are cited as support for the statement just quoted.

■ As indicated, defendant elected to argue both the due process ground and the equal protection clause in the same division of his argument. However, at another point in that division defendant does argue he has a present interest and is injured by enforcement of the licensing laws since they infringe upon his freedom to pursue his cosmetology trade when he contends the purpose of these statutes is to limit competition. Plaintiffs concede as much in written argument when they assert defendant urges "that the licensing laws arbitrarily limit competition under the guise of protecting the health and safety of the male public." We therefore consider defendant's contention that his own constitutional rights are violated under the equal protection ground as properly before us.

In Lunday v. Vogelmann, 213 N.W.2d 904, 906–908 (Iowa 1973), this court dealt with the nature of the burden of one attacking a statute on equal protection grounds both where the classification is one subject to close judicial scrutiny or traditional equal protection analysis. Although approved the discussion will not be repeated here.

■ Neither the provisions of sections 157.1 nor 158.2, The Code, prohibiting all except licensed barbers from rendering barber service to male adults are based upon sex, race, alienage or national origin but solely upon the basis of qualification by training to obtain a barber's license. The statutes are therefore subject to the traditional equal protection analysis with defendant having the burden to prove the statutes unconstitutional. He has failed to do so.

V. Defendant further contends that for cosmetologists to deny services and accommodations to males would be to force the

cosmetologists to violate the state's Civil Rights Act.

Plaintiffs argue the person must be first qualified to perform the service in question before he can be held to have violated the Civil Rights Act for failure to perform such services for all persons regardless of sex. Neither defendant nor plaintiffs argue the act is unconstitutional; defendant argues it is applicable to these facts, plaintiffs argue it is not. Defendant's argument is, and must be, predicated on the fact barbers and cosmetologists are equally able to provide their services to all persons.

■■ The phrase "public accommodations" as used and defined in section 601A.2(10), The Code, 1973, is broad enough to include barbers and cosmetologists within its meaning. The section provides: "'Public accommodations' means each and every place, establishment, or facility of whatever kind, nature, or class that caters or offers *services*, facilities, or goods to the general public for a fee or charge * * *." (Emphasis supplied).

■■ Defendant's argument overlooks the fact both barbers and cosmetologists are separately licensed and regulated. See chapters 157 and 158, The Code. However, his argument is predicated on the contention barbers and cosmetologists are equally qualified to perform both barbering and cosmetology services. That is to say, the Civil Rights Act prevents discrimination on the basis of sex, etc., by those persons who are qualified to perform a certain service; if the person alleged to have violated the act was not qualified to perform the service, his refusal or prevention by statute from performing it would not constitute a violation of the statute.

The case of Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758 (Iowa 1971) held that what were then sections 105A.1(1)(c), 105A.7(1)(c), 105A.9(12) and 105A.9(12), The Code, 1971, were constitutional. The cited case was the first appeal to reach this court requiring an interpretation of the Civil Rights Act. The particular issue there concerned the sections noted above rather than section 601A.6 and section 601A.2(10), The Code, 1973, which are of main importance here. Thus, these sections have never been interpreted. There is no issue as to their validity but merely as to their applicability to this factual situation.

*Iron Workers Local No. 67* had these generalities concerning the act: "The Iowa legislation is another manifestation of a massive national drive to right wrongs prevailing in our social and economic structures for more than a century. * * *

"In interpreting this legislation we also keep before us the admonition of the legislature that 'This chapter shall be construed broadly to effectuate its purposes'. * * *." *Id.* 191 N.W.2d at 765–766.

■■ The sections to which defendant calls attention are definitional ones. Barber shops and beauty shops come within the realm of the act but in regard to discrimination by a barber, for example, the act applies only to those he is qualified to service. Thus, a barber could not refuse to cut the hair of a black, nor could a cosmetologist refuse to render legally authorized services to a black woman. Such appears to be the intent of the legislature in passing the act. If, however, a person was unqualified by statute to service one of any nationality or sex, refusal to so service would not be a violation of the act. By statute, cosmetologists are unqualified to cut adult males' hair. Their refusal to do so, therefore, would not be a violation of the act.

In our opinion enforcement of neither sections 157.1 nor 158.2 compels defendant to discriminate against male members of the public in a manner contrary to the provisions of what is now chapter 601A, The Code.

In our de novo review we have considered each of the issues presented for review by defendant's appeal and conclude there is no merit in any contention for the reasons urged.

The case is therefore

Affirmed.

All Justices concur except McCORMICK and REYNOLDSON, JJ., who dissent.

McCORMICK, Justice (dissenting).

The basic issue in this appeal is the constitutionality of our statutes prohibiting cosmetologists from cutting the hair of males over 11 years of age.

Code § 158.2 authorizes only licensed barbers, barber apprentices and barber students to cut hair for cosmetic purposes but provides an exception "that licensed cosmetologists may cut the hair of any female person and of any male person under twelve years of age." Code § 157.1 includes the cutting of hair of females and children in the practice of cosmetology.

Division III of the majority opinion treats the due process and constitutional challenge to this prohibition. The due process question is whether the prohibition has a definite and reasonable relationship to its asserted goal to promote public health and safety. City of Osceola v. Blair, 231 Iowa 770, 2 N.W.2d 83 (1942). The equal protection question is whether the classification involved bears a fair and substantial relation to the same goal. Weber v. Aetna Casulty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972). The specific due process question is whether public health and safety is reasonably served by prohibiting cosmetologists from cutting hair of males over 11, and the specific equal protection question is whether public health and safety is served by saying barbers may cut such hair but cosmetologists may not.

I believe the legislature may prohibit cosmetologists from holding themselves out to be barbers and may separately license these trades, but I do not believe the legislature can constitutionally prohibit cosmetologists from practicing cosmetology on males over 11 years old.

Much of the record relied on by the majority is discredited when examined in the light of state department of health regulations governing cosmetology and barbering. The cosmetology regulations, adopted pursuant to Code § 157.6, are found in chapters 149 and 150, Iowa Departmental Rules (1973), and the barbering regulations, adopted pursuant to Code § 158.7, are found in chapters 152 and 153, Iowa Departmental Rules, supra.

Included in the 2100 hour curriculum mandated for approved schools of cosmetology are 60 hours of demonstration and lecture on sanitation and sterilization, 63 hours on hygiene and grooming, 63 hours on anatomy, 42 hours on dermatology, 42 hours on trichology, 70 hours on chemistry and chemical hair straightening, and 42 hours on safety precautions. Also prescribed are 60 hours of practical instruction on sanitation and sterilization, 49 hours on scalp and hair treatments, 210 hours on hair shaping, 315 hours on hair styling, and 49 hours on safety precautions. Iowa Departmental Rules, supra, at 477.

The 1800 hour curriculum mandated for barber schools does not specify the number of hours to be spent on each subject, but requires 361 hours of demonstrations and lecture, 39 hours of physician's lectures and 1400 hours of practical instruction. Iowa Departmental Rules, supra, at 481.

The sanitary requirements imposed on cosmetologists are at least as stringent as those imposed on barbers. Cosmetology regulations include:

"150.3(157) Sanitation and disinfection. Except as set forth in 150.3(3) all instruments in use in any cosmetology school or place in which cosmetology is practiced shall each time after use, be cleansed thoroughly with soap and hot

water and then be immersed at least 20 minutes in an approved disinfectant solution in a covered flat container large enough to immerse completely all instruments, after which they should be dried and placed in a closed cabinet. * * *

"150.3(1) Every cosmetologist shall wash his hands with soap and water immediately before serving each patron.

"150.3(2) Head coverings, hair pins, clips, rollers and curlers shall be washed and sanitized after each use as above directed.

"150.3(3) All metallic instruments with a cutting edge shall be kept clean by wiping carefully after each use with cotton saturated with an approved disinfectant solution. * * *

"150.4(157) Towels, containers and other supplies. A clean and freshly laundered towel shall be used for each patron. A closed cabinet or drawer shall be provided for clean towels and linen and a covered hamper for soiled towels and linen. Whenever a haircloth or cape is used, as in cutting the hair or shampooing, a newly laundered towel or tissue paper neck strip shall be placed around the neck to prevent the haircloth or cape from touching the skin.

"150.4(1) The headrest of every cosmetology chair shall be protected with fresh clean paper or cloth before its use for any patron. Rubber protective headrests are not permitted.

"150.4(2) If a gown is used, each patron shall be furnished a freshly laundered gown.

"150.4(3) Every operator shall have a minimum of 12 finger waving combs and brushes.

"150.4(4) The use of dusters, common powder puffs, nail buffers and sponges is hereby prohibited.

"150.5(157) Dispensers. Fluids and powders shall be applied to patrons from a shaker-type or aerosol dispenser.

Creams and other semisolid substances shall be removed from the containers with a clean spatula or similar article. Removing such substances with the fingers is prohibited. Creams shall be kept covered when not in use.

"150.6(157) Permanent wave equipment. Spacers and rods, including rods used in cold waving permanent methods, shall be cleansed with soap and hot water after each use and placed in a closed cabinet.

"150.7(157) Haircutting department. Anyone maintaining a haircutting department within a cosmetology establishment shall observe all rules on sanitation as prescribed for cosmetologists.

"150.8(157) Water—sewer. Every cosmetology school or place where cosmetology is practiced shall be supplied with an adequate supply of potable hot and cold water under pressure. Water shall be applied to a patron by the use of a spray. * * *"

Iowa Departmental Rules, supra, at 480–481.

Plaintiffs' assertions that cosmetologists lack training in haircutting and that they are not bound by comparable sanitary standards are untenable.

I do not think the legislature has exposed women and children to greater health and safety risks than men in licensing cosmetologists. Nor do I believe there is any physiological basis for saying there is a greater health or safety hazard when cosmetology is practiced on a man than when it is practiced on a woman.

The keystone of plaintiffs' argument is that barbers are better trained than cosmetologists to cut male hair and therefore the licensing statutes should protect their exclusive right to do so. The record does not support the premise of this argument. Unisex hair styles are in vogue. Barbers have had to adapt their skills accordingly. Cosmetologists were already trained in the styling, shaping and cutting of long hair and have had less adjustment to make.

This case would not have arisen had not a substantial number of men come to prefer what cosmetologists do with hair to what barbers do with hair. The sex classification in the licensing statutes serves no other purpose than to foreclose competition. Licensing statutes may not constitutionally be used for such a purpose. See Gregory v. Quarles, 172 Ga. 45, 157 S.E. 306 (1931); 58 Am.Jur.2d Occupations, Trades, and Professions § 2; 16A C.J.S. Constitutional Law § 510.

The question whether barbers are better suited than cosmetologists to cut male hair should be decided in the marketplace rather than the legislature or courts.

I would strike the prohibition of Code § 158.2 against cosmetologists cutting hair of males over 11 years of age, and I would strike the sex limitation of Code § 157.1, on grounds the prohibition and classification involved violate due process and equal protection.

Therefore I would reverse the trial court.

REYNOLDSON, J., joins this dissent.