649 F.2d 625
 C.R., individually and on behalf of all other persons
similarly situated, Appellant,
v.
David Arthur ADAMS, individually and in his capacity as
Judicial Hospitalization Referee, Michael V.
Reagen, Charles Palmer, and Candiah
Thiagarajah, Appellees.
 No. 80-2047.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 2, 1981.
Decided June 2, 1981.
 
 Philip Mears, Mears, Zimmermann & Mears, Iowa City, Iowa, for appellant.
 Thomas J. Miller, Atty. Gen. of Iowa, John G. Black, Sp. Asst. Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., Des Moines, Iowa, Steven S. Hoth, Des Moines County Atty., Burlington, Iowa, for appellees.
 Before LAY, Chief Judge, STEPHENSON and ARNOLD, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 This appeal presents the question of whether an outpatient, under Iowa law, has a right to notice and hearing before his status is revoked and he is returned to an institution for inpatient treatment. While this important constitutional question will be discussed in this opinion,[1] we find that another question is dispositive of the case at this point in the litigation. That question is whether this is an appropriate case for abstention by the federal courts in view of the unsettled state of Iowa law underlying the federal constitutional question presented to the District Court.
 
 
 2
 Plaintiff filed his suit in the United States District Court for the Southern District of Iowa as a class action on behalf of himself, all persons involuntarily committed to mental institutions in Iowa, and all those, like plaintiff, previously committed but currently on outpatient status. Defendants in this suit are David Arthur Adams, Judicial Hospitalization Referee for Des Moines County, Iowa, Michael V. Reagen, Director of the Iowa Department of Social Services, Charles Palmer, Director of the Division of Mental Health Resources for the Iowa Department of Social Services, and Candiah Thiagarajah, Clinical Director at the Mental Health Institute at Mount Pleasant, Iowa. Plaintiff brings his suit under 42 U.S.C. § 1983, alleging that Section 229.14(3) of the Iowa Code violates the Due Process Clause of the Fourteenth Amendment. He seeks both declaratory and injunctive relief.
 
 
 3
 After a brief hearing and the filing of affidavits, the District Court denied preliminary injunctive relief and denied plaintiff's motion for class certification. For the reasons set out below, we vacate those orders and remand the cause for further proceedings to be described below.
 
 
 4
 C.R. is a person living in Iowa who has spent most of the last seven years under one form of involuntary commitment or another. Most of that time he was under commitment orders from the District Court of Des Moines County, Iowa. He is currently under a new commitment order from Johnson County, Iowa. In May of 1978, May of 1979, and March of 1980, C.R. was released from Mount Pleasant as an outpatient under court order to continue treatment at a regional mental health center. During these periods of outpatient treatment, C.R. was still considered committed, and will remain so until his involuntary commitment is terminated by court order. While on outpatient status, C.R. is free to live in the community; his only restriction has been that he report periodically to a staff member at a designated mental health clinic. C.R.'s first two periods of outpatient treatment ended when his outpatient status was revoked and he was returned to Mount Pleasant. His deposition reveals that both times he was "picked up" and returned without notice or hearing. He claimed to have had no knowledge of the reasons for the revocations.[2]
 
 
 5
 In assessing plaintiff's request for injunctive relief under the requirements of Fennell v. Butler, 570 F.2d 263 (8th Cir. 1978), cert. denied, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978),[3] the District Court found that he had failed to make a showing of probable success on the merits and had not shown irreparable injury. The court held that since plaintiff was under the continuing jurisdiction of the committing court during the outpatient phase, he was not entitled to a due-process hearing prior to transfer back to inpatient status. The court further found plaintiff's private liberty interest "substantially reduced" by the continuing jurisdiction of the committing court and the fact that he was originally involuntarily committed after notice and a hearing. On the issue of irreparable injury, the court thought the chance of injury to be highly speculative, since C.R. was currently on outpatient status and there was no indication that that status was threatened with revocation.[4] As to the alternative test articulated in Fennell, the court found that the balance of hardships did not tip decidedly toward plaintiff because of the state's interest in the matter.
 
 
 6
 Allegations of violations of federal constitutional rights by state civil commitment procedures are of course within the jurisdiction of federal courts. Parham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Abstention from the exercise of federal jurisdiction is the exception, not the rule. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).
 
 
 7
 The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.
 
 
 8
 County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).
 
 
 9
 Plaintiff's allegation of denial of due process in his summary recommitment presents, in our view, a substantial constitutional question. Involuntary confinement for treatment of mental illness is a "massive curtailment of liberty." Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972).
 
 
 10
 There can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the state cannot accomplish without due process of law.
 
 
 11
 O'Connor v. Donaldson, 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975) (Burger, C. J., concurring). The cases of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), have taught us that persons such as parolees and probationers who enjoy only a limited or conditional liberty are nonetheless protected from deprivation of that conditional freedom without some process which is due. Other courts have found a strong analogy between the parolees' situation in Morrissey and the mental patient who has been granted outpatient status. Lewis v. Donahue, 437 F.Supp. 112 (W.D.Okl.1977); Meisel v. Kremens, 405 F.Supp. 1253 (E.D.Pa.1975). Even those persons who are confined in prisons have due-process rights when they are threatened with involuntary transfer from prison to a mental institution. Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).
 
 
 12
 Lower federal courts which have reviewed state recommitment statutes similar to Iowa's have uniformly found that the conditional liberty interest of a mental patient or of a drug-dependent person on outpatient status cannot be summarily terminated without notice and the opportunity for a hearing. Lewis v. Donahue, supra (statute permitting revocation of outpatient or convalescent leave without notice of hearing violates the Due Process Clause); Meisel v. Kremens, supra (Pennsylvania statute providing for summary revocation of leaves of absence from state mental health facilities at discretion of directors is violative of due process); United States ex rel. Shaban v. Essen, 386 F.Supp. 1042 (E.D.N.Y. 1974), aff'd without opinion, 516 F.2d 897 (2d Cir. 1975) (revocation of outpatient status of drug-dependent person is unconstitutional without written notice and an opportunity to be heard).
 
 
 13
 Other state recommitment statutes have been held to violate due process by state appellate courts. In re Bye, 12 Cal.3d 96, 115 Cal.Rptr. 382, 524 P.2d 854 (1974), cert. denied sub nom. Procunier v. Bye, 420 U.S. 996, 95 S.Ct. 1437, 43 L.Ed.2d 679 (1975); In re Anderson, 73 Cal.App.3d 38, 140 Cal.Rptr. 546 (1977); Ball v. Jones, 43 App.Div.2d 281, 351 N.Y.S.2d 199 (1974), modified on other grounds sub nom. Pannell v. Jones, 36 N.Y.2d 339, 368 N.Y.S.2d 467, 329 N.E.2d 159 (1975); cf. Dietrich v. Brooks, 27 Or.App. 821, 558 P.2d 357 (1976).
 
 
 14
 Although the question before the District Court in this case would ordinarily be an appropriate one for a decision on the merits, we think the proper action in the circumstances of this case is abstention under the Pullman doctrine. Railroad Commission of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Pullman abstention was recently examined by this Court in Coley v. Clinton, 635 F.2d 1364 (8th Cir. 1980). In that case, a class of plaintiffs challenged Arkansas's recently revised civil commitment procedures found in the Arkansas Mental Health Act of 1979.[5] After applying the five factors to be considered in deciding whether to abstain from a case under the Pullman doctrine,[6] this Court held in Coley that the relatively new commitment procedures were "unclear and susceptible to interpretations that would entirely obviate appellants' federal constitutional claims." Id. at 1373. The case before us is analogous.
 
 
 15
 C.R. challenges Section 229.14(3) of the Iowa Code, Iowa Code Ann. § 229.14(3) (West Supp.1980), on the assumption that it does not provide for notice or hearing upon revocation of outpatient status and recommitment. The question of Iowa statutory construction is not, however, so simple as that. Section 229.14(3) reads, in part:
 
 
 16
 The order (that the respondent is seriously mentally impaired and in need of treatment, but does not require full-time hospitalization) shall provide that if the respondent fails or refuses to submit to treatment as directed by the court's order, he or she shall be taken into custody and treated as a patient requiring full-time custody, care and treatment in a hospital until such time as the chief medical officer reports that the respondent does not require further treatment for serious mental impairment or has indicated he or she is willing to submit to treatment on another basis as ordered by the court.
 
 
 17
 This section says nothing about notice and hearing one way or the other. Testimony at the hearing on C.R.'s motion and affidavits filed with the District Court revealed that the most common practice in the counties surveyed by plaintiff's attorney is summary revocation of outpatient status without any notice to the patient. The practice is by no means settled, however, and some counties routinely hold hearings. In others a hearing is optional on the request of the patient or the mental health advocate. Revocations of outpatient status are made upon the recommendation of the patient's treating psychologist or psychiatrist. If the patient is refusing treatment, which usually means missing appointments, the treating psychologist informs the mental health referee, who has the authority to issue an order for the patient's return to the institution. The patient is then picked up by local law-enforcement authorities.
 
 
 18
 Section 229.14(3) is further explained by Section 229.15(2), which provides in part:
 
 
 19
 If at any time the patient without good cause fails or refuses to submit to treatment as ordered by the court, the medical director shall at once so notify the court, which shall order the patient hospitalized as provided by section 229.14, subsection 3 unless the court finds that the failure or refusal was with good cause and that the patient is willing to receive treatment as provided in the court's order, or in a revised order if the court sees fit to enter one. If the medical director at any time reports to the court that in his opinion the patient requires full-time custody, care and treatment in a hospital, the court may order the patient's involuntary hospitalization for appropriate treatment upon consultation with the chief medical officer of the hospital in which the patient is to be hospitalized.
 
 
 20
 (Emphasis supplied.) This provision leaves us uncertain about the plaintiff's and the District Court's assumption that the patient has no statutory right to a hearing when outpatient status is revoked for failure to submit to treatment. The good-cause provision appears to give the patient a right to challenge the medical director's determination that he is refusing treatment. The court is directed to return him to the hospital only if the failure to submit to treatment is "without good cause." The court is directed not to return the patient if it makes the finding that the failure to submit to treatment was with good cause, and the patient is willing either to submit to the treatment as provided in the court's order or to submit to the treatment provided in a revised order, if the court wishes to enter one. It is difficult to imagine how a patient could show good cause or show his willingness to receive treatment if he has not at the very least been notified that his status is in danger of revocation.[7] It also appears that the court could not revise its treatment order without some type of information from the treating facility and presumably the patient himself.
 
 
 21
 When these two sections are read together, they supply a basis for an argument that outpatients have a right under Iowa state law to some type of notice and hearing when their status is to be revoked for failure to accept treatment.[8]
 
 
 22
 In another revocation and recommitment setting, the Iowa Supreme Court has ruled that due process requires notice and a hearing before a criminal defendant who has been admitted to a drug-treatment facility in lieu of prison commitment can be incarcerated for unacceptable progress in the drug-treatment program. State v. Grimme, 274 N.W.2d 331 (Iowa 1979). A reading of that case suggests that the Supreme Court of Iowa might reach the same conclusion if confronted with the case before us.[9]
 
 
 23
 Having concluded that the challenged state law is unclear and that it is fairly susceptible of an interpretation that would avoid any federal constitutional question, we now turn to the three other factors to be considered under the Pullman doctrine. George v. Parratt, supra. First, what effect will abstention have on the rights to be protected? Plaintiff claims a "liberty interest" in maintaining his outpatient status. Since the case was presented to the District Court, however, plaintiff has once again been institutionalized, this time after notice and hearing. Abstention by the District Court in this case would have no immediate effect on C.R., at least as long as he remains an inpatient. Although it is true that he may at some time in the future once again be threatened by revocation of his outpatient status, he is for the present farther removed from that threat than he was when he filed his claim for injunctive relief.
 
 
 24
 Another factor to be considered is whether there is an available state-law remedy. Declaratory judgment actions may be brought in Iowa under Rule 261 of the Iowa Rules of Civil Procedure. Such actions are available to construe a state statute, Wesselink v. State Dept. of Health, 248 Iowa 639, 80 N.W.2d 484 (1957), and to test the constitutionality of a statute, Green v. Shama, 217 N.W.2d 547 (Iowa 1974). There is no apparent reason why such a suit could not be brought by the plaintiff. We also note that plaintiff could continue to present his claims on a class basis in the state courts if he desired. Green v. Shama, supra.
 
 
 25
 The final factor to be considered is whether abstention will avoid unnecessary federal interference in state operations. Given the strong argument for abstention presented by the unsettled nature of Iowa law and the probability that a state-court challenge would obviate the need for federal judicial intervention, we think, in the interest of comity, that Iowa courts should be given the opportunity to decide this question. While the fact that there has been no state-court determination is not enough in itself to compel abstention, Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967), when all the factors are considered together, abstention is appropriate in this case. We have previously held that the interpretation of unclear commitment statutes "is a matter involving sensitive and important state interests in its mental health program." Coley v. Clinton, supra, at 1373.
 
 
 26
 The order of the District Court is vacated, and the case is remanded for the entry of an order of abstention. The District Court is directed to retain this case on its docket pending the disposition of state-law issues in the state courts. C.R. may either present his federal constitutional claims to the state courts or reserve the right to return to the federal court. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The order denying class certification is also vacated. That question may be met if and when the parties return to the District Court.
 
 
 27
 Vacated and remanded with instructions.
 
 
 
 [1]
 While we discuss plaintiff's claim in some detail and try to identify possible interpretations of Iowa state law, nothing in this opinion should be construed as expressing our judgment on the merits of plaintiff's claims. See First Am. Bank & Trust Co. v. Ellwein, 474 F.2d 933, 936 (8th Cir. 1973) (per curiam)
 
 
 [2]
 C.R.'s outpatient status was again revoked after he filed this suit. His commitment from Des Moines County was terminated, and, after a hearing, he was committed under a new order from Johnson County. As of the date of oral argument in this case, April 2, 1981, he remained an inpatient at Mount Pleasant Mental Health Institute
 
 
 [3]
 The District Court's order was entered before our decision in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc)
 
 
 [4]
 C.R.'s outpatient status was in fact revoked a few days after the District Court hearing
 
 
 [5]
 Another part of Coley dealt with a challenge to portions of the Arkansas Criminal Code which apply to commitment of criminal defendants. This Court upheld the District Court's decision to abstain in that part of the case on the basis of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [6]
 The five factors are: what effect will abstention have on the rights to be protected, whether there are available state remedies, whether the challenged state law is unclear, whether the state law is fairly susceptible of an interpretation that would avoid any federal constitutional question, and whether abstention will avoid unnecessary federal interference in state operations. George v. Parratt, 602 F.2d 818, 820-22 (8th Cir. 1979)
 
 
 [7]
 At oral argument defendants' attorney told the Court that in Des Moines County the clerk has begun to give notice when a patient assertedly is not meeting his appointments. The parties also agreed that the county would hold revocation hearings during the pendency of this litigation
 
 
 [8]
 The other basis for revocation described in § 229.15(2) is a determination that the patient's condition has worsened to such an extent that hospitalization is required. The "good cause" language may not apply to this situation, and the statute is silent as to the patient's right to challenge the determination that his mental condition has deteriorated
 
 
 [9]
 Interestingly, the Iowa court cited two cases finding a liberty interest in mental patients' outpatient status in support of its holding that a defendant has a liberty interest in not being transferred from a drug-treatment program to prison. 274 N.W.2d at 336, citing In re Bye, supra, and Ball and Pannell v. Jones, supra