Nathaniel ROBINSON, Appellant,

v.

The CITY OF OMAHA,
NEBRASKA, Appellee.

No. 88–1759.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1988.

Decided Jan. 31, 1989.

Thomas F. Dowd, Omaha, Neb., for appellant.

Thomas O. Mumgaard, Omaha, Neb., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and NICHOL,* District Judge.

LAY, Chief Judge.

Nathaniel Robinson has been employed for over twenty years by the City of Omaha (City) as a custodian. On March 11, 1988, he filed for candidacy for a non-partisan position on the Board of Directors of the Omaha Public Power District, a public utility. On April 5, 1988, Robinson's supervisor notified him that his candidacy violated a provision of the Omaha Home Rule Charter. Robinson was given three options: to take a leave of absence during his candidacy, to withdraw his candidacy, or to resign from his job with the City. Robinson declined the choice of the options presented and thereafter sued the City of Omaha under 42 U.S.C. § 1983. He alleged that provisions of the Omaha Home Rule Charter and the Omaha Municipal Code violated his federal constitutional rights. He also brought a second cause of action under

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

Nebraska Revised Statute section 23–3001 (recodified 20–160 in Nebraska Statutes Reissue 1987). His second claim is that the city laws violated the Nebraska statute, as applied to him. On May 6, 1988, the district court rendered judgment for the City, finding that there was no constitutional violation. It held that the City had shown that the restrictions on political activities are compelling and that the means to achieve those ends are reasonable. Further, the court found that the ordinance was not vague and overbroad under the fourteenth amendment. The district court did not pass on the defendant's second claim concerning the alleged conflict between the state law and the city ordinance and charter provisions. Presumably, the court treated this claim as a state pendent claim and declined to pass on it. Robinson now appeals.

■■■■ In this case, the plaintiff-appellant asks this court to apply the federal constitution in such a way so as to invalidate the City's laws preventing his candidacy. The applicability of federal court abstention was raised neither below nor on appeal. Nevertheless, since "[t]he practice of abstention is equitable in nature," *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976) (*citing Railroad Comm'n of Tx. v. Pullman Co.*, 312 U.S. 496, 500–01, 61 S.Ct. 643, 645–46, 85 L.Ed. 971 (1941)), this court may raise the issue of the appropriateness of abstention *sua sponte*. *Bellotti*, 428 U.S. at 144 n. 10, 96 S.Ct. at 2864 n. 10; *accord Edwards v. Arkansas Power & Light Co.*, 683 F.2d 1149, 1156 n. 9 (8th Cir.1982). We believe the exercise of *Pullman* abstention to be appropriate in the instant case.

The *Pullman* abstention doctrine counsels restraint in the use of federal judicial resources under certain circumstances. This court has said: "*Pullman* requires a federal court to refrain from exercising jurisdiction when the case involves a poten-tially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially alter the need for a decision on federal constitutional grounds." *Moe v. Brookings County, S.D.*, 659 F.2d 880, 883 (8th Cir. 1981). Thus, for *Pullman* abstention to be appropriate, two requirements must be met.

First, the controlling state law must be unclear. Second, a tenable interpretation of the state law must be dispositive of the case. In other words, if a reasonable interpretation would render unnecessary or substantially modify the federal constitutional question then abstention is appropriate. *See generally* C. Wright, *The Law of Federal Courts* 304 (4th ed.1983). Both these requirements are met in this case. We deal with them in turn.

In the case at bar, a city ordinance was enforced to the plaintiff's detriment. Pursuant to Omaha Home Rule Charter section 6.11 [1] Robinson's supervisors effectively forced him to choose either his city job or his candidacy. Robinson mounted a federal constitutional challenge to that ordinance. He also challenged the ordinance under Nebraska state law. As stated above, the state law challenge went unaddressed at the court below. It is in the consideration of this claim that we find the abstention doctrine appropriate.

Nebraska Revised Statute section 20–160 conceivably supports Robinson's position. Nebraska Revised Statute section 20–160 (Reissue 1987) (formerly section 23–3001) states:

Employees of state or political subdivisions; prohibited from political activities during office hours, while performing official duties, or while wearing a uniform. Unless specifically restricted by a federal law or any other state law, no employee of the state or any political subdivision thereof, as defined in subdivision (2) of section 13–702, shall be prohibited from participating in political activities except

---

1. Omaha Home Rule Charter Section 6.11 reads in part:

Any non-elective officer or employe in the city service who seeks nomination or becomes a candidate for any elective office in any public body, except to serve as a delegate or alternate to caucuses or conventions of political parties, shall immediately forfeit his position in the city service; provided, however, nothing in this section shall prohibit a non-

during office hours or when otherwise engaged in the performance of his or her official duties. No such employee shall engage in any political activity while wearing a uniform required by the state or any political subdivision therefore.

Source: Laws 1977, LB 398, § 1.

On its face, the statute applies to employees either of the state *or* of political subdivisions. The City of Omaha is a political subdivision of Nebraska. Under Nebraska law, state subdivisional laws must not conflict with "the general laws of the state." Nebraska Revised Statute section 14–102.-01 (Reissue 1987) provides:

> A city of the metropolitan class may make all such ordinances, bylaws, rules, regulations, and resolutions not inconsistent with the general laws of the state, as may be necessary or expedient, in addition to the special powers otherwise granted by law, for maintaining the peace, good government, and welfare of the city and for preserving order, securing persons or property from violence, danger, and destruction, for protecting public and private property, for promoting the public health, safety, convenience, comfort, morals, and general interests, and welfare of the inhabitants of the city.

Thus, if section 20–160 is found to be inconsistent with the charter and ordinance provisions of the City of Omaha, the city's provisions must be overridden.

The issue, then, is whether section 20–160, which prohibits state (and subdivisional) entities from restricting employees "from participating in political activities ex-cept during office hours * * *," serves to invalidate the charter and ordinance provisions. As far as we can discover, neither section 20–160 nor its predecessor section 23–3001 has been interpreted by the Nebraska Supreme Court. The legislative history of the statute appears equivocal. *See* Nebraska Legislature, Floor Debate on LB 398, Floor Debate Transcript at 1210–12 (Mar. 10, 1977); 1835, 1838 (Mar. 23, 1977); 2594–99, 2602, 2604–05 (Apr. 6, 1977); 2816–17 (Apr. 14, 1977); 3432–33, 3435, 3437–38 (Apr. 26, 1977); 3542–46, 3549 (Apr. 27, 1977). Although floor debate disclosed that the statute was intended to remove previously existing restrictions upon Nebraska Game and Parks Commission employees, it is expressed in language that appears to apply equally to *all* state (and political subdivisional) employees. On the surface, the statute would appear to apply to Robinson. In sum, we find that the statute is unclear as to whom it should apply.

The statute is also silent as to whether "political activity" encompasses campaign activities undertaken on behalf of another, as well as for one's personal candidacy. Again, the legislative history is ambiguous. *See* Nebraska Legislature, Floor Debate on LB 398, Floor Debate Transcript at 1836 (Mar. 23, 1977); 2594–96, 2599, 2601 (Apr. 6, 1977); 2816 (Apr. 14, 1977); 3439 (Apr. 26, 1977). Several explanatory amendments to the statute were considered and rejected, but the inferences arising from their failure to pass are conflicting. We thus hold that the statute's meaning is unclear also as to the scope of activities

elective officer or employe from seeking nomination or becoming a candidate for any elective office in any public body who first shall have received a leave of absence from the city service, approved by his or her department head and the Personnel Board of the City of Omaha.

A non-elective officer or employe in the service of the City shall not hold any office in, or be employed by, any other public body. No person seeking appointment to or promotion in the service of the City shall give, render, or pay any money, service, or other valuable thing to any person in connection with his test, appointment or promotion. Any person who willfully or corruptly violates any of the provisions of this section shall be subject to dismissal and such other punishment as may be provided by law.

Although apparently not originally cited as authority by the City of Omaha for prohibiting Robinson's candidacy, Robinson also challenges a similar provision of the Omaha Municipal Code, Section 23–7:

Sec. 23–7. Political activity restricted.

(a) No nonelective officer or employee in the city service shall actively participate in any political campaign, solicit or contribute funds for any political purpose, or hold office in any political party, other than to exercise his or her right as a citizen to express his or her opinion and to cast his or her vote.

(b) Any nonelective officer or employee who seeks nomination or becomes a candidate for any elective office shall immediately forfeit his or her position in the city service.

encompassed within "political activities." Therefore, we determine that the more reasonable course for federal courts to pursue would be to abstain, allowing Nebraska's courts to construe Nebraska Revised Statute section 20–160, and to determine whether the state statute and the laws of the City of Omaha are in conflict.[2]

*Pullman*'s remaining requirement demands that a plausible interpretation of the state law be determinative of the case. It is entirely possible that the Nebraska courts will decide that the statute prohibits Omaha from preventing Robinson's candidacy. If this occurs, Omaha Municipal Code section 23–7 and Omaha Home Rule Charter section 6.11 would be nullified. If the Nebraska courts construe the statute in this manner, the interpretation of the statute will obviate the federal constitutional issue.[3] In sum, the *Pullman* doctrine counsels us to stay our hand pending an authoritative determination of the state law and city ordinances involved here.

We therefore remand the case to the federal district court with directions to vacate the district court order and to abstain from further proceedings "pending the disposition of state-law issues in the state courts." *C.R. v. Adams*, 649 F.2d 625, 630 (8th Cir.1981). *See also Bob's Home Serv., Inc. v. Warren County*, 755 F.2d 625, 628 (8th Cir.1985). "[The plaintiff] may either present his federal constitutional claims to the state courts or reserve the right to return to the federal court." *Adams*, 649 F.2d at 630. *See also England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411, 417, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964).

Vacated and remanded with instructions.

---

**2.** *Accord Coley v. Clinton*, 635 F.2d 1364, 1373 (8th Cir.1980), citing as a factor to consider in the determination of *Pullman*'s applicability, "whether abstention will avoid unnecessary federal interference in state operations."

**3.** *Accord Praprotnik v. City of St. Louis*, 798 F.2d 1168 (8th Cir.1986), *rev'd on other grounds*, —— U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The Eighth Circuit stated: "The *Pullman* absten-

tion doctrine counsels federal courts to defer deciding matters 'when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.'" 798 F.2d at 1173 n. 4 (citing *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984)).